stock was subsequently pledged to the plaintiff, subject to the lien of the Seneca Falls Bank, the possession by the first pledgee might be regarded as the possession of the second pledgee through the agency of the former. Jones on Pledges and Collat. (2d Ed.) pp. 81, 82, § 83.

2. It is said that no consideration for the contract was alleged in the complaint, and it was improper to permit any consideration to be proven on the trial. The contract itself showed a pledge for present and future indebtedness, and it might fairly be assumed, therefore, that there was some indebtedness then existing. We do not see that any reversible error was committed in aiding such assumption by some evidence of such indebtedness. This action, it will be remembered, was merely to reform the contract, and not to establish any indebtedness thereunder. That will be determined in another action, if there is controversy with reference thereto.

3. It is said the court was powerless to afford the relief sought. While very likely Bacon could not, after he was adjudged a bankrupt, have corrected the contract, because the rights of creditors had intervened, and they were represented by the trustee, who alone had power to act, for the debtor as well as the creditors, yet, when both Bacon and the trustee were brought into court, we see no reason why the relief asked for could not be afforded.

4. It is said no demand was made before suit. No demand was necessary. Bacon could not comply with the demand, and the trustee would not have been justified in doing so. The demand could have served no useful purpose. No costs were allowed plaintiff by the trial court.

5. It is said that the bankruptcy of Bacon constituted a bar to the relief granted in this action. This cannot be true. The trustee took the bankrupt's property in the same condition and subject to the same liens as the bankrupt himself held it. The trustee is in no sense a bona fide purchaser for value, and entitled to protection as such. No new lien was created by the decision and judgment appealed from. The original lien was adjudicated and determined.

We conclude that the judgment is right, and should be affirmed.

Judgment affirmed, with costs. All concur.

---

(112 App. Div. 581)

PEOPLE ex rel. CITY OF GENEVA v. GENEVA, W., S. F. & C. L. TRACTION CO.

(Supreme Court, Appellate Division, Fourth Department. May 2, 1906.)

1. STREET RAILROADS—FRANCHISES—POLICE REGULATIONS—POWER OF CITY.
  Where a city granted a franchise to a street railway company, authorizing it to construct, maintain, and operate a street surface railroad in the streets of the city, such franchise, though a contract between the city and street car company, was subject to the police power of the city to regulate the manner in which the street should be used.

  [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, § 28.]

2. CONSTITUTIONAL LAW—CITY CHARTER—RELOCATION OF STREET RAILROADS
—VALIDITY—IMPAIRMENT OF CONTRACT.

Geneva City Charter, Laws 1897, p. 444, c. 360, § 65, as amended by Laws 1905, p. 1032, c. 462, provides that if any street in which a street surface railroad is now or shall hereafter be operated shall be paved, repaired, or altered, etc., the board of public works shall have power to require the railroad corporation operating such street surface railroad to change its grade and line to conform to such alteration or improvement in such manner as the board shall designate, at the expense of such railroad company. *Held,* that such provision was not unconstitutional, as an impairment of the contract rights of a street railroad operating its line on the north side of a street under a franchise acquired from the city, though the required change of location would necessitate a large expenditure on the part of the railroad company.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 344.]

3. MANDAMUS—SCOPE OF REMEDY—STREET RAILROADS—CHANGE OF LOCATION.

Where a street railroad was under a legal obligation to change the location of its line on the demand of the city's board of public works, preliminary to the improvement of the street, the city was entitled to compel such change by mandamus. ·

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Mandamus, § 267.]

Appeal from Special Term, Ontario County. ·

Mandamus by the people on relation of the city of Geneva, against the Geneva, Waterloo, Seneca Falls & Cayuga Lake Traction Company, to compel defendant to remove its railroad track from its present location on the north side of North street, in the city of Geneva, N. Y., to practically the center of such street, and to change the line and grade of its railroad in the street, as required by the city's board of public works, according to plans adopted by the board. A peremptory writ was granted, from which defendant appeals. Affirmed.

The proceeding was commenced on the 24th day of July, 1905, by the service of notice of motion and accompanying affidavits, returnable on the 31st day of July, 1905, but was not heard until the 9th day of September, 1905, when the motion was argued upon the moving papers and opposing affidavits presented by the defendant, and the motion was submitted to the court on that day. As appears by the order appealed from, the absence of consents of abutting owners on the south side of North street was urged as a defense to the motion, and counsel for the relator thereupon offered to procure and furnish to the defendant such consents. It is recited that such consents were duly procured and served upon the defendant·on the 20th day of January, 1906, and an affidavit by relator's attorney was submitted to the court on the 22d day of January, 1906, stating that they had been so served. Thereupon and on the same day the order appealed from was made, and entered on the following day.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Charles A. Hawley, for appellant.
W. Smith O'Brien, for respondent.

McLENNAN, P. J. It is alleged in the moving affidavits in substance: That the relator is a municipal corporation created under and by virtue of chapter 360, p. 422, of the Laws of 1897 and the acts amendatory thereof. That by title 5 (page 440) of said act a department of public works was created·in and for said city of Geneva, composed of five commissioners, constituting the board of public works

of said city, and vested with "the charge, management, control and maintenance of the streets and bridges within the corporate limits of said city, including the right to repair, grade, pave, improve and establish the grade line of the same." That the defendant is a street surface railroad corporation, and since 1895 has been the owner of and engaged in operating a street surface railroad upon certain streets in said city, among others upon North street for a distance of upwards of 4,000 feet; its tracks being located on the northerly side of said street. That on the 23d day of March, 1905, at a regular meeting, the board of public works, by the adoption of a proper resolution, determined to pave and improve North street at an estimated cost of $48,000, in accordance with plans and specifications showing the grade, location, and lines of such pavement. Thereafter, and on the 25th day of May, 1905, by suitable resolution, the board determined that, in order to pave and improve North street in accordance with its previous determination, it would be necessary for the defendant to change the grade and line of its tracks, and it was directed and required to remove its tracks from the side of North street, and place them in the center of the space determined to be paved by the relator's board of public works. That such resolution was served upon the defendant, and it refused and still refuses to comply with the same. It is alleged:

"That in order to complete said improvement it will be necessary to materially change the grade of said street, and, as has been determined by said board, it will also be necessary to change the location of the tracks of said street surface railroad. That the tracks of said railroad as now located are between the center and north line of said street, and at different points in said street the whole or some portion of the roadbed of said street railroad as now located is south of the line of the north curb of said pavement as said pavement is proposed to be constructed. * * * That before said street can be paved it will be necessary that the work of changing the location of said tracks be performed in whole or in part, and it is not possible for the board of public works of said city to pave and improve said street as proposed, or perform any considerable part of such work, until the location of said street railroad tracks shall have been changed as directed by said board."

It is also alleged that:

"The owners of property abutting on said North street, by way of preparing for said proposed improvement, have at large expense made excavations in said street and put in lateral connections to sewer and water mains in said street, resulting in making the surface of said street irregular and uneven, so that it is important to the interest of the public and residents of said street that the work of paving and improving the same be done as soon as possible."

The moving papers contain other allegations, the details of which need not be recited, but are to the effect that the defendant's rights in the premises are dependent upon certain franchises given to or agreements made with it or its predecessors and the relator or its predecessor, the village of Geneva, all of which, however, it is claimed, are subject to any and all reasonable regulations and modifications which might thereafter be prescribed by the Legislature of the state or by the municipality under authority delegated to it; that among the powers so reserved by the Legislature and delegated by it to the relator are the following, as expressed in section 65 (as amended by Laws 1905, p. 1032, c. 462) of the charter of said city:

"If any street, section of a street, public place, or square in which a street surface railroad is now, or shall be hereafter operated, shall be paved, repaired or macadamized, or any such street straightened, widened or altered, the board of public works shall have power to require the railroad corporation operating such street surface railroad to change its grade and line to conform to such alteration or improvement in such manner as said board shall designate, and the corporation operating such street railroad shall, at its own expense, change its line and grade to conform, to such direction as the board of public works shall make. Nothing herein shall be held to relieve any such railroad corporation from paying its share of the cost of such improvements, as provided by this act."

The opposing affidavits do not in any manner controvert the material facts stated in the moving papers, viz.: That the relator has determined to pave and improve North street, and for that purpose has changed the grade and line of the portion of the street to be paved; that the line so established is interfered with by the tracks of the defendant as at present located. It is not claimed that the determination of the relator's board of public works to make the change and improvement in question was not made in good faith; but it is claimed by the defendant that such determination is unwise and ill-advised, because, as alleged, defendant's railroad can be operated on the northerly side of said street, practically as now located, with less inconvenience and greater safety to the public than in the center of the paved portion of such street, and that said street can be paved with equal advantage to the relator and to the public without materially interfering with the railroad tracks of the defendant; that the proposed change of its tracks will necessitate an expenditure of practically $20,000 on the part of the defendant, which, it is alleged, is unnecessary and will result in serious injury to the property rights and interests of the defendant. We consider that the statements contained in the moving and opposing affidavits do not raise a material issue of fact. We therefore need only inquire whether the relator as matter of law had the power or authority to compel the defendant to change the grade and line of its tracks as required by its board of public works and in accordance with the resolution adverted to. Such power and authority is given to the relator in express language by section 65 of its charter above quoted, and, unless its provisions contravene the Constitution of the state, the discretion of the board of public works of the relator, assumed to be exercised pursuant thereto, is not subject to review by this court.

We will assume the fact to be, as claimed by the defendant, that its right to construct, maintain, and operate a street surface railroad in North street, in the city of Geneva, N. Y., was acquired under and by virtue of a franchise granted by the board of trustees of the village of Geneva, relator's predecessor, to the Geneva & Waterloo Railway Company, defendant's predecessor in interest, on the 16th day of May, 1893, and a contract made as required thereby, dated May 17, 1893, and a resolution of such board of trustees fixing the location of the tracks of said railroad upon such street, which were constructed in accordance therewith; that such proceeding constituted a contract binding alike upon the relator and the defendant, under which the defendant acquired a property right (People v. O'Brien. 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684); and that such contract or

grant is within the protection of the provision of the Constitution which prohibits the impairment of obligations or contracts.  The defendant accepted the grant to it from the relator, proceeded in good faith and according to the terms of its charter to exercise the right and enjoy the privileges thereby conferred, and there was no reservation of the right to revoke or recall the privileges so granted to it; and it is beyond dispute that to make the change in the grade and line of its railroad as required by the relator will cause inconvenience and great expense to the defendant.  But, giving full recognition to the above facts and to the provision of the Constitution which prevents the impairment of contract, we think it was entirely competent for the relator to compel the defendant to change the grade and line of its railroad, so as to conform to the grade and line of the street determined by the relator to be paved and as required by it.

Concededly under its charter the relator had the right, through its board of public works, to improve, and for that purpose to change and establish the grade line of, any street; and by section 65 of its charter it is specifically authorized to compel a street surface railroad occupying a portion of any street to change its grade or location to conform to the grade or alteration determined upon by said board.  And it is evident from the facts disclosed by the record that the improvement contemplated by the relator cannot be made unless the defendant complies with the writ granted herein.  By the grant given to the defendant or the contract made by it, the municipality could not divest itself of the right to make such reasonable changes in the grade and line of its streets as were needful and necessary in order to protect and promote the interests of the traveling public therein.  That was a governmental power, inherent in the Legislature and in this case delegated by it to the municipality.  As stated by Mr. Elliott, in his work on Roads and Streets (section 742):

"No contract can be made which assumes to surrender or alienate a strictly governmental power which is required to continue in existence for the welfare of the public.  This is especially true of the police power, for it is incapable of alienation.  It cannot be doubted that a company which secures a right to use the streets of a municipal corporation takes it subject to the police power resident in the state as an inalienable attribute of sovereignty."

Giving full recognition to the principle contended for by the appellant, that the franchise which it obtained from the relator constituted a contract which was under the protection of the provisions of the Constitution, we consider it well settled by authority that such contract was accepted by defendant subject to the police power of the municipality to regulate the manner in which it should use the streets of such municipality.  Davis v. Mayor, etc., of New York, 14 N. Y. 506, 67 Am. Dec. 186; Davis v. Read, 65 N. Y. 566.  In Indianapolis v. State, 37 Ind. 489, it was held that a railroad company might be compelled to adjust the grade of its tracks to correspond to the grade of intersecting streets of a municipality.  Mr. Elliott (section 75) states the rule to be that the railroad acquires its rights "subject to the higher and dominant right of public necessity, and whenever public safety or necessity requires a change in the grade of a turnpike at points where it crosses the streets of a city or town the company must make it.  This is substantial-

ly the rule with respect to railroads. * * *" In People ex rel. Kimball v. B. & A. R. R. Co., 70 N. Y. 569, the court said, per Earl, J.:

"Railroad corporations hold their property and exercise their functions for the public benefit, and they are therefore subject to legislative control. The Legislature which has created them may regulate the mode in which they shall transact their business, the price which they shall charge for the transportation of freight and passengers, the speed at which they may run their trains, and the way in which they may cross or run upon highways and turnpikes used for public travel. It may make all such regulations as are appropriate to protect the lives of persons carried upon railroads or passing upon highways crossed by railroads. All this is within the domain of legislative power, although the power to alter and amend the charters of such corporations has not been reserved."

The right contended for by the respondent in this case to compel the defendant to change the location of its tracks is not different in principle from an act requiring a corporation to remove wires from poles overhead and place them in conduits under the surface of the ground; yet such acts have been held to be constitutional. People ex rel. N. Y. Electric Lines Co. v. Squire, 107 N. Y. 593, 14 N. E. 820, 1 Am. St. Rep. 893. The same principle is involved in the acts of the Legislature requiring railroad companies to abolish grade crossings, which acts have also been held to be constitutional. The precise question involved in the case at bar was decided adversely to appellant's contention in West Philadelphia Passenger Ry. Co. v. City of Philadelphia, 10 Phila. (Pa.) 70, where it was held that a street railway might be compelled by the municipality to change the track of its railway from one part of the street to another. See, also, Binninger v. City of New York, 177 N. Y. 199, 69 N. E. 390; Village of Mechanicville v. S. & M. St. Ry. Co., 174 N. Y. 507, 66 N. E. 1117.

We think the cases cited are authority for the proposition that the constituional provision forbidding the impairment of contract was in no sense violated by requiring the defendant to change the grade and line of its tracks in North street to conform to the grade and line of such street as established by the relator's board of public works. We think, also, it is well settled that mandamus was the proper remedy by which to enforce the performance of such duty by the railroad company. Bayard v. U. S., 127 U. S. 246, 8 Sup. Ct. 1223, 32 L. Ed. 116; People ex rel. Third Ave. Ry. Co. v. Newton, 112 N. Y. 399, 19 N. E. 831, 3 L. R. A. 174. Mandamus has been held to be the proper remedy to compel a railroad to build a fence on each side of its road (People ex rel. Garbutt v. R. & S. L. R. R. Co., 76 N. Y. 294); to compel a railroad to build a bridge (People ex rel. Kimball v. B. & A. R. R. Co., 70 N. Y. 569); to compel a railroad to grade its tracks so as to make crossings convenient and useful (People ex rel. Green v. D. & C. Ry. Co., 58 N .Y. 152); and many other cases of like character might be cited.

The proposition is intolerable that a street surface railroad company, or other corporation which may be given a license to occupy the streets of a municipality in a particular manner, may not be compelled, when the conditions and locality change, when public convenience and necessity require, to make such changes in its grade or line as the public necessity may demand. Any other rule would make it possible for a railroad company to forever prevent improvements and develop-

ment in a particular section of the municipality—would make it the arbiter as to what might or ought to be done for the improvement or benefit of any particular locality. Notwithstanding the learned counsel for the appellant argues with great earnestness the proposition that by the proposed action of the relator the rights of his client are being seriously impaired and that the provisions of the Constitution in that regard are being violated, we think there is absolutely nothing new or novel in the proposition, but that by an unbroken line of decisions extending over a period of nearly a century it has been held that under just such circumstances a corporation authorized to occupy a street or a municipality may be compelled to change its grade and location and the manner of its use, if necessary to meet the new conditions and requirements of the locality.

We think the order appealed from is right, and that it should be affirmed, with costs.

Order affirmed, with costs. All concur.