380        APPELLATE COURTS OF ILLINOIS.

P., C., C. & St. L. Ry. Co. v. Chicago City Ry. Co., 224 Ill. App. 380.

## Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 25,495.

1. APPEAL AND ERROR—*scope of review.* In an action by a steam railway company to recover from a street railway company the amount expended by it in removing certain poles and excavating a subway at a street containing defendant's tracks, where defendant claimed a set-off for expenses incurred in the reconstruction of its roadbed, etc., *held* that as the amount which either was entitled to recover from the other was agreed upon and depended upon the law applicable to the case, it followed that the amount either was so entitled to recover, if any, under the stipulated facts, and the grounds for such recovery, were questions of law which required the construction of the elevation ordinances in question and a consideration of the police powers of the city, and as the record failed to disclose the view of the trial court upon any of the questions, it became the duty of the Appellate Court, under the decisions of the Supreme Court, to review the entire record and decide all material questions raised by counsel based upon the stipulated facts.

2. RAILROADS—*power which is source of track elevation ordinances.* It is the settled law of this State that track elevation ordinances of the character of the one in question have their source in the police power of the city.

3. RAILROADS—*track elevation ordinance as for protection of public.* A track elevation ordinance ordered by the city council is not for the benefit of the railway company, but for the protection of the public.

4. STREET RAILROADS—*what is nature of grant of franchise and right in street.* A grant of a franchise to a street railway company appurtenant to a street, and a right of occupancy to a portion thereof peculiar and exclusive to itself, is in the nature of a lease.

5. EMINENT DOMAIN—*what not taking of property without due compensation.* Uncompensated obedience to a regulation, enacted in the exercise of police powers for purposes of public safety, does not constitute a taking of property without due compensation.

6. RAILROADS—*when street railway company not entitled to set-off in action resulting from track elevation.* Under a certain elevation ordinance requiring the elevation of any additional tracks that might be constructed upon the elevating company's right of way to the same extent and in the same manner as it required the

elevation of the so-called main line, certain switch tracks constructed east of the original main line in question were subject to the same rules as the so-called main line tracks which crossed the street in question prior to the passage of the ordinance; and defendant street railway company was not entitled to set-off, in a suit by the steam railroad company to recover the expense of excavation work, reconstruction expenses incurred because of the increased width of the elevated structure and increased length of the east approach to the subway occasioned by carrying such switch tracks across the street, because defendant was obligated to make the grade of its tracks conform to any change in the grade of the street.

7. RAILROADS—*when neither party in action by railroad against street railway resulting from track elevation can recover.* In an action by a steam railroad company to recover from a street railway company the amounts expended by it in removing certain poles and in elevating its tracks and excavating a subway at a street upon which defendant's tracks were laid, where defendant claimed a set-off for expenses incurred in the reconstruction of its roadbed, etc., the elevation ordinances in question were construed and the police powers of the City of Chicago considered in connection with the stipulation as to the facts under which the amount either party was entitled to recover, if any, was agreed on, and *held* that the steam railroad company was not entitled to compensation for the removing of poles which the street car company did not remove, nor was it entitled to recover for money expended in doing such excavation work as it was required to do under the ordinances; and that the street car company was not entitled to recover under its claim of set-off, as it was obligated to make the grade of the tracks conform to any change in the grade of the street, and it could not be regarded as occupying the position of an abutting property owner.

Appeal from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed. Opinion filed March 21, 1922. Rehearing denied April 26, 1922.

HARRY P. WEBER, GEORGE W. MILLER, ARTHUR J. DONOVAN and ARTHUR A. ANDERSON, for appellant.

LOESCH, SCOFIELD, LOESCH & RICHARDS, for appellee; THEODORE SCHMIDT, of counsel.

382 APPELLATE COURTS OF ILLINOIS.

P., C., C. & St. L. Ry. Co. v. Chicago City Ry. Co., 224 Ill. App. 380.

MR. JUSTICE MORRILL delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Cook county in an action of assumpsit under the common counts brought by the appellee against appellant to recover certain amounts expended by appellee in elevating its tracks and excavating a subway at Fifty-ninth street, an east and west street in the City of Chicago. The case was tried by the court without a jury and resulted in a judgment in favor of appellee for the sum of $1,130.20. The appeal from this judgment has heretofore received our consideration (221 Ill. App. 23), resulting in an order of affirmance by this court, for the reason that the record presented no questions of law for review. For that reason we declined to review the judgment on its merits. This decision was reversed by the Supreme Court (*Pittsburgh, C., C. & St. L. Ry. Co. v. Chicago City Ry. Co.,* 300 Ill. 162), so that the case is now before us for determination upon its merits. In prior proceedings the appellee has been designated as the "railway company" and the appellant as the "traction company." For the sake of brevity and to avoid confusion we shall continue to employ the same nomenclature.

Before the elevation of its tracks the railway company operated a steam railroad line across Fifty-ninth street, at grade, in the City of Chicago and the traction company maintained and operated a street railway line on said street, the western terminus of which was a point 20 feet east of the railway company's main line. This action involves the relative obligations growing out of the elevation of the railway company's tracks across Fifty-ninth street and the construction of a subway thereunder and the necessary relocation and realignment of the traction company's surface railway. It requires a consideration and construction of the ordinance under which the

track elevation took place (hereinafter called the "track elevation ordinance") and the ordinance under which the traction company maintained and operated its street railway (hereinafter called the "traction ordinance"). The railway company's claim is for the sum of $1,130.20, of which amount $1,108 was the expense incurred by it in making necessary excavations so as to lower the street to the new grade established by the track elevation ordinance. The area excavated by it, for the expense of which it claims reimbursement, was 16 feet wide and 468 feet long, located at Fifty-ninth street immediately east of the company's main line. This area, except the west 20 feet thereof, was occupied by the tracks of the traction company prior to the track elevation. The remaining $22.20 was the cost of removing two of defendant's trolley poles.

The declaration contained the common counts only, to which defendant filed a plea of the general issue and three pleas of set-off, in which the traction company sought compensation for its expense in reconstructing its equipment occasioned by the elevation of the railway company's tracks and the construction of the subway thereunder. All of this equipment was removed preliminary to the track elevation and subway construction and had to be restored. The various items of the cost of these transactions were agreed upon by the parties. The first plea of set-off is based upon the common counts; the second alleges the taking, damaging and injuring of the property of the traction company as the direct result of the elevation of the tracks of the railway company and the construction of the subway; and the third sets forth that the traction company was required to do certain things under the ordinance authorizing its use of the street for the operation of the system, its acts pursuant thereto, the passage of the track elevation ordinance on April 22, 1912, the acts of the railway com-

pany in constructing the subway and approaches thereto for the purpose of elevating its tracks over Fifty-ninth street pursuant to the track elevation ordinance, and that in consequence thereof defendant was compelled to remove its equipment from said subway and approaches, reconstruct its roadbed, tracks and electrical equipment and repave a portion of the street occupied by its tracks so reconstructed and a portion additional thereto. It is averred that the expenses so incurred by the traction company amount to $10,986.66, for the payment of which it contends the railway company is liable.

There is no dispute as to the facts in the case, all of which are embodied in a stipulation between the parties. This stipulation sets forth the incorporation of the City of Chicago under the general law of the state, the organization of the respective companies, certain facts respecting the railway company's main line right of way and ownership of abutting and adjacent property upon a portion of which it had switch and storage tracks; that it had no tracks across Fifty-ninth street east of its main line; the track elevation ordinance enacted April 22, 1912, under which the tracks were elevated; the traction ordinance enacted February 11, 1907, under which defendant operated its lines, including the line on Fifty-ninth street, its acceptance and compliance therewith by the traction company; the facts pertaining to the construction and operation of the traction company's line, the elevation of the railway company's main street and other tracks east thereof across Fifty-ninth street; the change of grade; the construction of the subway and approach; the removal and restoration of defendant's equipment; the items constituting their respective claims; and the enactment of an ordinance by the City Council of Chicago on December 17, 1913, authorizing and requiring the traction company to extend its Fifty-ninth street line westerly from its former terminus to Ked-

P., C., C. & St. L. Ry. Co. v. Chicago City Ry. Co., 224 Ill. App. 380.

zie avenue under the same terms and conditions as were specified in the traction ordinance of February 11, 1907. The foregoing is a general statement of the contents of the stipulation, but in addition it is necessary to state some of the details therein set forth. It was stipulated that the work of elevating the tracks and constructing the subway was completed about the end of the year 1914; that the provision in the track elevation ordinance for the construction of the subways and their approaches was to avoid the necessity of elevating the tracks of the railway company to the height above the level of the streets which would have otherwise been necessary; that the extension of the subway in Fifty-ninth street east of the railway company's main line and the construction of an elevated structure over this extension was for the purpose of carrying thereon yard and switch tracks in addition to the tracks of its main line, which yard tracks the railway company constructed subsequent to the passage of the track elevation ordinance; that if the railway company had elevated the roadbed and tracks of its main line and constructed the subway beneath such tracks, the subway in Fifty-ninth street would not have extended beyond the east line of the main line and the east approach of the subway would have extended only to a point approximately 250 feet east of the east line of said main line. It was also stipulated that the railway company placed in the subway center columns for the support of its elevated structure and constructed a concrete wall or wheel guard 3 feet in width at the base of said columns and approximately 3 feet high extending between and along the sides of said center columns, thereby requiring the building of separate tracks by the traction company on either side of said concrete walls, which separation continued outside of the subway, but with a gradual convergence until the two tracks connected with the tracks on the regular double track right of way of the

traction company; that in the subway and for 30 feet outside thereof the distance between the track centers was 14 feet, 1 inch (or 19 feet, 3 inches from outside rail to outside rail), which, on the approach, gradually diminished until it reached the width of the regular double track right of way of 10 feet, 2 inches (or 15 feet, 4 inches from outside rail to outside rail). It also stipulated that the railway company did the excavation work for the subway and each approach thereto in Fifty-ninth street as required by the track elevation ordinance, and in so doing destroyed the roadbed, track substructure, pole foundations, paving and conduits of the traction company in Fifty-ninth street for a distance of approximately 448 feet; that the construction of the subway and approach thereto by the railway company required the taking up and removal of the traction company's tracks, ties, wires and poles in Fifty-ninth street for a distance of approximately 448 feet east of a point 20 feet east of the main line of the railway company, constituting that part of the traction company's street railway in Fifty-ninth street, where the subway and approach were built; that the railway company did not excavate the subway and approach to the depth required for the construction of the traction company's roadbed and track substructure therein as specified in the traction ordinance and that the traction company was therefore compelled, in compliance with said traction ordinance, to excavate an additional depth of 11 inches in the subway and approach for a width varying from approximately 17 feet at the east end of the approach to approximately 21 feet at the portal of the subway and within the subway for a width of approximately 17 feet for both tracks; that the traction company reconstructed in said subway and approach that part of its Fifty-ninth street line which had been removed as aforesaid and paved with granite blocks the space between the rails of each track in the

subway and approach and also paved the space between the inner rail of each track and the center concrete wall in the subway and for a like distance on the approach for a total width of 8 feet for each track; that the 6-inch brow or stretcher course outside of the outer rails of the traction company's line, as reconstructed in the subway and approach, was paved by the railway company with granite blocks furnished by the traction company, and that the railway company also paved with granite blocks the additional space on the approach between the tracks of the traction company due to the spread of said tracks as aforesaid, which additional space was in excess of the 16 feet which the traction company paved as aforesaid. It was also stipulated that after the railway company had completed the excavation work above specified and the construction of the center columns and wheel guards in the subway, the traction company, in conformity with the extension ordinance of December 17, 1913, extended the tracks of its Fifty-ninth street line in a westerly direction through said subway and, in the construction of the roadbed and substructure for each of said tracks, excavated an additional depth of 11 inches in said subway and also paved the space between the rails of said extension tracks in said subway and between the inner rail of each track and the center wheel guard in said subway, being a total width of 8 feet for each track, and the railway company paved the 6-inch brow or structure course outside the outer rail of each of said extension tracks in said subway with granite blocks furnished by the traction company. The general nature of the claims of the respective parties and the items constituting the railway company's claim have been mentioned heretofore. The amount of the claim of the traction company was agreed to be $10,986.66. The details of the respective claims are further shown by

itemized statements attached to and forming a part of the stipulation.

Under these stipulated facts the court found the issues for the railway company and assessed its damages at the agreed amount of its claim and disallowed defendant's claim of set-off.

The amount, if any, which either party was entitled to recover from the other, was agreed upon and depended upon the law applicable to the case. It follows that the amount which either party was entitled to recover against the other under the stipulated facts and the grounds for such recovery, if any, are questions of law, which require a construction of the two ordinances mentioned and a consideration of the police powers of the city. The record does not disclose the view of the trial court upon any of these questions. It therefore becomes our duty, under the decision of the Supreme Court, to review the entire record and decide all material questions which have been brought to our attention by the arguments of counsel based upon the stipulated facts.

Under the stipulation it is agreed that the claim of the railway company is for the *cost of excavating for the subway and east approach* in the center of Fifty-ninth street, a strip varying in width from 18 to 22 feet and 468 feet in length, extending from the east line of the railway company's main line to a point approximately 468 feet east of such east line, amounting to $1,108, and the cost of removing two trolley poles belonging to the traction company, amounting to $22.20, making a total amount claimed of $1,130.20, for which the circuit court gave judgment. The traction company claims as damages the cost of reconstructing a part of its street railway in Fifty-ninth street for a distance of 448 feet east of a point 20 feet east of the main line of the railway company, including paving its right of way and installing the electrical work, amounting to the sum of

$10,986.66. The traction company based no claim for a recovery on account of reconstruction of its lines for a distance of 20 feet west of its western terminus or for work done pursuant to the requirements of the extension ordinance of December 17, 1913. The traction company claims that the railway company under the track elevation ordinance was required to elevate the tracks of its main line only, but that for its own convenience and benefit it had caused permission to be given to it under the ordinance to construct additional yard and switch tracks adjacent to its main line and east thereof, thereby increasing the width of the elevated structure and the length of the subway in order to provide for these additional tracks, which were constructed at a later date. The traction company further contends that the total length of the subway which the ordinance required the railway company to build would have been approximately 410 feet in length, but the length of the subway as actually built was approximately 650 feet, which necessitated extra excavation and paving and the removal and reconstruction of an extra 208.25 feet of the tracks of the traction company. It was stipulated that the cost of the excavation for this increased distance was $403.20 and the damages incurred therefrom by the traction company was $5,053.86. It follows that the damage to the traction company if the subway had not extended beyond the east line of the main line of the railway company would have been $5,932.80. Consequently if the pleas of set-off of the traction company are sustained in their entirety, the liability of the railway company was $10,986.66, and that if they are sustained only to the extent of the damages incurred on account of the increased width of the elevated structure and the increased length of the subway, the liability of the railway company would be $5,053.86.

The ordinance under which the traction company

390     APPELLATE COURTS OF ILLINOIS.

P., C., C. & St. L. Ry. Co. v. Chicago City Ry. Co., 224 Ill. App. 380.

maintained and operated its Fifty-ninth street line
was enacted by the City Council of Chicago February
11, 1907. The provisions of this ordinance, which are
applicable to the present controversy, prescribe the
kind of rails to be used, the character of the roadbed
under the tracks, the character and method of over-
head construction and the construction of under-
ground feed and transmission wires. It required
the traction company to lay its tracks so as to conform
to the grade of the street as the same is, or from time
to time shall be, established by the city council, to
fill, grade, pave and keep in repair 8 feet in width
of all streets occupied by it with a single-track rail-
way and 16 feet in width of all streets occupied by it
with a double-track railway. On April 22, 1912, the
traction company was operating a double-track rail-
way on Fifty-ninth street as a part of its system, but
it had no tracks laid and no authority to construct or
operate a street railway on Fifty-ninth street across
the tracks of the railway company. The traction ordi-
nance further provided, in substance, that nothing
therein contained shall be construed as depriving the
City of Chicago of the right of exercising any police
power which it would otherwise possess or enjoy.
The same right to the exercise of its police powers is
reserved to the city by the street railroad statute, in
effect March 7, 1899, which provides, in substance,
that every grant to any street railway company of
a right to use any street or highway shall be subject
to the right of the proper authorities to control the
use, improvement and repair of such street or high-
way to the same extent as if no such grant had been
made, and to make all necessary police regulations
concerning the management and operation of such
railroad regardless of whether such right is reserved
in the grant or not. Rev. St. ch. 131a, sec. 4 (Cahill's
Ill. St. ch. 131a, ¶ 4).

The track elevation ordinance was passed by the

city council April 22, 1912, and required the railway company to elevate the tracks of its main line over Fifty-ninth street. The height of the required elevation was not sufficient to permit the ordinary use of the street by the public and for that reason provision was made for the depression of the street and the construction of a subway under the elevated tracks. The ordinance provided for the construction of the subway and the overhead structure. It contained a provision whereby the railway company was given permission to construct additional tracks on its property adjacent to the main line provided they should be elevated over the street in the same manner as the tracks of the main line. This ordinance required the railway company to do the necessary excavating for the subway and approaches and to pave the subway throughout its entire length and width, with the exception that it was not required to pave any portion of the subway or approaches to be occupied by or which are adjacent to the street railway tracks, which, by reason of existing laws or ordinances, it was the duty of any street railway or other corporation to pave. This proviso clearly indicated the duty of the traction company to fulfill the requirements of the traction ordinance as to paving portions of the street occupied by its tracks. The track elevation ordinance further provided that the grade of Fifty-ninth street should be changed to conform to the subway and its approaches *when the same should be constructed in compliance with the ordinance,* and further provided that any street railway company which occupied any of the streets crossed by the proposed elevated road-bed and tracks should, "when and as the grade of such street shall be changed as in this ordinance provided, at its own expense, without claim for damages, conform the grade of its track or tracks to the said change of grade of said streets." The track ordinance further provided that none of its provisions

392 APPELLATE COURTS OF ILLINOIS.

P., C., C. & St. L. Ry. Co. v. Chicago City Ry. Co., 224 Ill. App. 380.

should operate to relieve any street railway company occupying a portion of the street in question from its existing liability to realign its tracks, to excavate or pave or bear the expense of realignment or excavating or paving the subways or approaches between or on the outside of its rails or tracks. It also provided that this provision should include the excavations and paving of all of the area within the inside rails of street railway tracks in said subways and approaches developed by reason of the spread of the street railway tracks in said subways to provide proper and safe clearance from the columns supporting the bridges carrying the elevated roadbed and tracks of the railway company.

Undoubtedly it is the settled law of this State that this particular track elevation ordinance, as well as others of a similar character, have their source in the police power of the city. It has been so held in a number of cases. *Murphy v. Chicago, R. I. & P. Ry. Co.*, 247 Ill. 614; *Weage v. Chicago & W. I. R. Co.*, 227 Ill. 421; *People v. Grand Trunk Western Ry. Co.*, 232 Ill. 296. There is no claim of any abuse of discretion in the exercise of this power in the present case. The right of the city to exercise its police powers was expressly reserved in the traction ordinance and by the street railroad act above mentioned. Consequently it became the duty of the traction company to fulfill all obligations imposed upon it by the track elevation ordinance which had been enacted by the city council under the police powers reserved to the city.

Before the commencement of the elevation work there was some discussion between the two companies as to their respective rights, duties and liabilities under the track elevation ordinance. Consequently the railway company, on July 18, 1913, addressed to the traction company a letter calling attention to the necessity of removing the traction company's tracks

and overhead equipment so as to permit the construction of the subway and the east approach thereto. In this letter the railway company suggested that the traction company remove its poles, wires and tracks and replace the same at the proper time, keeping a record of the cost; that the railway company would do all of the excavation work and the necessary paving, except the 16 feet of right of way of the traction company, keeping a record of the cost of such work; that the cost to the parties of the above-mentioned work should be borne by the respective parties as they might agree at a later date, and that in case of failure to agree, then their respective liability should be determined by the judgment of a court and that the agreement covered by the foregoing proposition should not operate as a waiver of or to the prejudice of any of the legal rights of either of the parties in the premises. This proposition was accepted by the traction company, and in conformity therewith the traction company removed all of its poles and wires except the two trolley poles, which were removed by the railway company at a cost of $22.20, as hereinbefore stated. This agreement settled nothing as to the rights or liabilities of the parties, but merely provided a plan and method for doing the necessary work. We think that a fair construction of its terms indicates an understanding between the parties that each of them should pay to the other the reasonable cost of any work done by either of them to relieve the other of any obligation imposed upon it by the track elevation ordinance. This ordinance required the traction company to conform the grade of its tracks to the change of grade effected by the construction of the approach to the subway, necessitating the removal of the traction company's equipment in the portion of the street included in the approach to the subway. The two trolley poles, for the removal of which the railway company claims compensation,

were a part of the traction company's equipment.
The balance of this equipment was removed by the
traction company. Doubtless it was to its interest to
do this work so as to secure the best results from
the salvage or future use of the various items. The
record does not furnish any explanation as to why the
traction company failed to remove these two particu-
lar poles or as to their final disposition. The fact
that the traction company failed to remove them and
that the railway company did remove them as a nec-
essary incident to the performance of its obligations
under the track elevation ordinance furnishes no rea-
son for its reimbursement for that particular piece of
work.

The balance of the railway company's claim is for
excavating a portion of the street included in the ap-
proach to the subway. We find no provision of the
track elevation ordinance whereby the traction com-
pany was required to do any part of the excavation
work required in the construction of the approach to
the subway. After the lowering of the street surface
so as to conform to the new grade established by the
ordinance as a result of the construction of the ap-
proach to the subway, it was the duty of the traction
company to make such further excavation for its sub-
structure as might be required in conforming the
grade of its tracks to the new grade of the street. To
require the traction company to lower that portion of
the street which it had formerly occupied would im-
pose upon it some of the expense of excavating for
the approach to the subway which the railway com-
pany was required to do under the terms of the track
elevation ordinance. There was no requirement upon
the traction company to do any excavating work in
order to carry into effect the change of grade in the
street, for which the track elevation ordinance pro-
vided. Consequently we are of the opinion that the
railway company is not entitled to recover for the

item of $1,108 expended by it in doing a portion of the excavation work which it was required to do under the terms of the track elevation ordinance.

An analysis of the traction company's claim of set-off, amounting to $10,986.66, shows that it includes heavy disbursements for labor, but in no way indicates the exact purpose for which this labor was employed, whether in the fulfillment of obligations imposed upon the traction company by that ordinance, or for the construction work necessary under the extension ordinance of December 17, 1913. We infer from the stipulation that this amount represents the entire expenditure by the traction company for labor upon its tracks and street equipment, in re-establishing its line of Fifty-ninth street as it existed prior to the track elevation and subway construction. The same is true as to the expenditures for the large list of supplies and material used in and about the work. Some credits are allowed which are presumably for old material that was employed in the reconstruction work. This fact shows that a large portion of the material used in this reconstruction work was new, thereby indicating that the traction company did something more than to restore its tracks and street equipment to the condition in which they existed prior to the construction of the subway and elevated structure. There are also charges of 10 per cent for superintendence and use of tools and for stores expenses and accounting at the rate of 15 per cent. We assume that these are usual and reasonable charges for the purpose, but unless the amount upon which these percentages are computed is fairly chargeable to the railway company, these items cannot be allowed to stand. The other items consist of a few small charges for teaming and work cars and for miscellaneous expenses. It is the theory of the traction company that all of these expenses constitute the damages incurred by it as the result and consequence of the erection of

the elevated structure and the construction of the subway and its approaches, for which it is entitled to recover as an abutting property owner, while the railway company insists that this expense cannot be charged against it for the reason that the expenditures in question were incurred by the traction company in doing the things it was required to do under the ordinances mentioned.

It is contended by the traction company that the construction of the subway and the elevated structure involved herein necessitated a change in the grade of Fifty-ninth street, which was not an ordinary change in the street grade and not made for street purposes but for railway purposes, even though it was required by a city ordinance enacted under the police power. It has been held that an abutting property owner who has suffered special damages, not common to the general public, is entitled to a recovery in case of the construction under a city ordinance of a viaduct for carrying railway tracks over the street, whereby the abutter's rights of ingress and egress were impaired, the recovery being justified upon the ground that the construction of the viaduct was not a reasonable, ordinary and usual street improvement. *City of Pueblo v. Strait*, 20 Colo. 13. The same rule has been applied in the case of a subway for the use of the public in passing under railroad tracks (*City of Colorado Springs v. Stark*, 57 Colo. 384; *Louisville Steam Forge Co. v. Mehler*, 112 Ky. 438), and in the case of the construction of a bridge for carrying the street over railway tracks (*Schneider v. City of Detroit*, 72 Mich. 240), and in the construction of a subway under railroad tracks, wherein it was held that the lowering of the street was for railway purposes and not for street purposes. *Pabst Brewing Co. v. City of Milwaukee*, 157 Wis. 158, followed by *Eisler v. Chicago, M. & St. P. Ry. Co.*, 163 Wis. 86, wherein a recovery was allowed, although the work was done by the railway

company pursuant to a city ordinance enacted under the police power as in the case at bar. It is settled law that where the establishment or change of grade is made not for ordinary and usual street purposes but for the use and convenience of railway or other private companies, or by the municipality for other than ordinary and proper street uses, an abutting property owner can recover special damages sustained by him. 4 Dillon on Municipal Corporations (5th Ed.) 1686. If the traction company in the case at bar can be regarded as occupying the position of an abutting property owner, its right to recover damages as alleged in its pleas of set-off seems to be clear under the stipulated facts.

The track elevation ordinance was enacted by the city under its police powers for the purpose of making the street safe for all persons using it, including the traction company and its patrons. It established a new street grade in Fifty-ninth street. Under the traction ordinance the traction company had the right to use a portion of the street in operating its cars, but was obligated to make the grade of the tracks conform to any change in the grade of the street. The track elevation was ordered by the city council not for the benefit of the railway company, but for the protection of the public. *People v. Grand Trunk Western Ry. Co.*, 232 Ill. 292. The traction company is not in the position of an abutting property owner who has suffered special damages on account of an unreasonable change in the grade or use of a street and is not within the rule under which it claims compensation. While it is true that the traction company has a property right under its franchise in its equipment which it has installed in availing itself of the privileges granted by the traction ordinance, it has no property right in the location, with reference to the street grade, of any of its substructures or surface equipment. The traction company accepted its

398 APPELLATE COURTS OF ILLINOIS.

P., C., C. & St. L. Ry. Co. v. Chicago City Ry. Co., 224 Ill. App. 380.

franchise subject to the condition that it would conform at its own expense to any regulations not arbitrary in their character as to the use of streets, which might from time to time be established by the city. *Cincinnati, I. & W. Ry. Co. v. Connersville,* 218 U. S. 336. The traction company contends that having acquired its franchise and located its tracks upon the street, it has thereby acquired a property right of which it cannot be deprived by compelling it to make the grade of its tracks conform to a change of grade in the street, rendered necessary to carry into effect a legislative enactment designed for the protection of the traction company and its patrons, as well as other constituent elements of the general public. A similar question was involved in the case of *New Orleans Gaslight Co. v. Drainage Commission,* 197 U. S. 453, wherein it was held that the imposition on a gas company of the cost of changes in the location of its pipes and mains under the city streets, necessitated by the construction of a municipal drainage system, did not impair any contract rights acquired under the company's exclusive franchise for supplying gas to the inhabitants of the city, and that the gas company had no such property right in the location of its pipes and mains, laid under such franchise, as to make the imposition upon it of the cost of changes in the location of such pipes and mains, necessitated by the construction of the drainage system, a taking of property without due compensation.

The exhaustive brief filed on behalf of the traction company contains no citation of authority showing that it occupies the position of an abutting property owner. The character of the rights acquired by the traction company in the streets where it has been authorized to operate has been settled by many decisions in which that question was involved. The traction company did not become the owner of any portion of the street in fee, but it did acquire a right to occupy

P., C., C. & St. L. Ry. Co. v. Chicago City Ry. Co., 224 Ill. App. 380.

a portion of the street with its rails and cars so far as necessary for the operation of its railroad. It has a franchise appurtenant to the street and a right of occupancy to a portion thereof peculiar and exclusive to itself. Such grants are in the nature of leases. *City of Chicago v. Baer,* 41 Ill. 306; *Cicero & P. St. Ry. Co. v. City of Chicago,* 176 Ill. 501; *City of Chicago v. University of Chicago,* 302 Ill. 455. It is within the power of the city to determine the particular parts of each street upon which the tracks shall be laid. *Peoria Ry. Co. v. Peoria Ry. Terminal Co.,* 252 Ill. 73. The facts in the case at bar do not show that the traction company has been deprived of any of its rights in the street as a result of the track elevation ordinance. It has been held repeatedly that uncompensated obedience to a regulation enacted in the exercise of police powers for purposes of public safety does not constitute taking property without due compensation. *New Orleans Gaslight Co. v. Drainage Commission,* 197 U. S. 453; *National Water-Works Co. of New York v. City of Kansas,* 28 Fed. 921; *Chicago, B. & Q. R. Co. v. City of Chicago,* 166 U. S. 226. If the traction company was compelled to incur expense as a result of the change in the grade of Fifty-ninth street in order to carry into effect the provisions of the track elevation ordinance, it was compensated by sharing in the general benefits accomplished as a result of the enactment. *City of Chicago v. Jackson,* 196 Ill. 496.

The traction company claims that a considerable portion of the expense which it has incurred is due to the increased width of the elevated structure and the increased length of the east approach to the subway occasioned by carrying across the street certain switch tracks, which did not cross the street at the time of the enactment of the traction ordinance. It contends that the construction of the additional tracks east of the original main line of the railway company

was solely for the benefit of the railway company. The track elevation ordinance required the elevation of any additional tracks that might be constructed upon the railway company's right of way to the same extent and in the same manner as it required the elevation of its so-called main line. This right of way as defined in the ordinance included these tracks, which at that time terminated south of the south line of Fifty-ninth street. These tracks were carried across the street for the convenience and better accommodation of the public. They are subject to the same rules as the so-called main line tracks which crossed the street prior to the passage of the ordinance. *People v. Blocki,* 203 Ill. 363.

For the reasons already indicated, we think that the judgment against the traction company was not justified. We are further of the opinion that the stipulated facts do not show that the traction company has suffered damages for which it is entitled to recover from the railway company. We are of the opinion that these stipulated facts do not show a cause of action in favor of either of the parties against the other.

The judgment of the circuit court is reversed.

*Reversed.*

GRIDLEY, P. J., and BARNES, J., concur.