(No. 17833.—Reversed and remanded.)
THE PEOPLE *ex rel.* The City of Chicago, Appellant, *vs.*
THE CHICAGO CITY RAILWAY COMPANY, Appellee.

*Opinion filed December 23, 1926—Rehearing denied April 7, 1927.*

1. MUNICIPAL CORPORATIONS—*street railway's license to use the streets conveys no interest in soil.* A street railway company, under an ordinance giving it the right to lay its rails in the streets, acquires no interest or estate in the soil, as the grant made by the city is merely a license to construct and operate the railway upon certain streets, which becomes a contract when accepted and acted upon in a substantial manner,

2. SAME—*railway company's license to use streets cannot affect city's police power.* The grant of a license to a street railway company to use the streets of a city is subject to a reserved police power on the part of the city to regulate the use and enjoyment of the streets by the railway company in such manner as the public convenience or safety at any time may require, and in the promotion of the public safety and welfare the city may make an improvement in a street and require the railway company to re-lay its tracks in conformity therewith without violating the contract.

3. SAME—*city may compel street railway company to re-locate its tracks in interest of public safety—eminent domain.* As street railways occupy public streets subject to the use of such streets by the public and subject to such burdens as may be made necessary by reason of the improvement of the streets in the interest of public safety and convenience, a city may compel a railway company to re-locate its tracks in conformity with the widening of a street by the city in the interest of public safety; and such re-location of the tracks may be compelled by the city without resort to the exercise of the power of eminent domain.

4. SAME—*power to protect public in use of streets cannot be abrogated by ordinance or contract.* The power of a city to protect the public in the use of its streets cannot be abrogated by ordinance or relinquished by contract.

5. POLICE POWER—*the police power includes promotion of public convenience.* The police power of a State embraces regulations designed to promote the public convenience as well as regulations designed to promote the public health, morals and safety.

DUNCAN, J., dissenting.

APPEAL from the Circuit Court of Cook county; the
Hon. OSCAR M. TORRISON, Judge, presiding.

FRANCIS X. BUSCH, Corporation Counsel, and JAMES J. COUGHLIN, (C. MORTON DOTY, WILLIAM J. TUOHY, and C. R. LARRABEE, of counsel,) for appellant.

CHARLES M. HAFT, and HARRY P. WEBER, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is from the decision of the circuit court of Cook county dismissing the petition of the city of Chicago in which it asked that a writ of *mandamus* issue directing the Chicago City Railway Company to remove its tracks and trolley poles from their existing location in Twenty-second street between Archer avenue and Michigan avenue and re-locate them in the same street to conform to the center line of said street as and when widened.

Twenty-second street is an east and west street in the city of Chicago, 66 feet in width, with a paved roadway of 38 feet. As an aid to the lake front improvement the city council has, under the Local Improvement act, instituted proceedings for the widening of Twenty-second street west from Michigan avenue to Archer avenue by condemning a 54-foot strip of land on the south side of the street. The railway company now maintains a double track occupying a 16-foot strip in the center of the old 38-foot roadway. The new roadway is to be 88 feet wide, and if the street car tracks were to remain in their present location the north line of the 16-foot strip would be nine feet from the north curb and the south line of the strip would be 63 feet from the south curb. The traffic on Twenty-second street at the point in question is heavy, and when the street has been improved as planned it will be a part of one of the main arteries of travel south from the principal business district and traffic on it will be greatly increased. The improvement cannot be completed according to plans and specifica-

tions unless the tracks of the railway company be located on a strip in the middle of the street. All these facts are admitted by the pleadings, and it is also admitted that the public improvement will promote the public welfare, comfort and convenience.

The concrete case arising on the record in this case is this: The city of Chicago, a municipal corporation charged with the duty of providing and maintaining safe and adequate streets for the public welfare and convenience, has adopted a reasonable and suitable plan to accomplish that object. That plan cannot be carried out unless the railway tracks and trolley poles erected in what will be the north half of the street as and when widened are removed. Their removal will render it necessary for the railway company to reconstruct them in the middle of the widened street if it continues to operate its road. The re-location will cost about $300,000.

Appellee contended in the circuit court that an order requiring it to re-locate its tracks at its own expense would deprive it of its property without due process of law, would take and damage its property for public use without compensation, and would impair the obligation of its contract ordinances with appellant, contrary to the constitution of this State and the constitution of the United States, and its contentions were sustained. These questions are certified to this court in accordance with section 104 of the Practice act.

A street railway acquires no interest or estate in the soil by laying its rails on the streets under an ordinance permitting it. The grant made by the city is merely a license to the railway company to construct and operate its road upon certain streets, (*City of Sullivan* v. *Central Illinois Public Service Co.* 287 Ill. 19; *Chicago City Railway Co.* v. *People,* 73 id. 541;) which becomes a contract when it is accepted and acted upon in a substantial manner. (*Peoria Railway Co.* v. *Peoria Railway Terminal Co.* 252 Ill. 73; *City of Chicago* v. *Chicago and Oak Park Elevated*

*Railroad Co.* 250 id. 486; *City of Chicago* v. *Chicago Telephone Co.* 230 id. 157.)   In so far as the contract between the city and railway company relates to matters which do not affect the public safety, welfare, comfort or convenience the constitutional prohibition against impairing the obligation of a contract applies, but where, under the police power, the city directs some improvement to be made by the railway company which will promote the public safety, welfare, comfort or convenience no contractual obligation of the city is impaired, because the city has no power to surrender any of the police powers delegated to it by the legislature.   (*City of Chicago* v. *O'Connell,* 278 Ill. 591.) The license under which the railway company constructs, maintains and operates its railroad was granted and accepted subject to a reserved police power on the part of the city to regulate the use and enjoyment by the railway company of the street in such manner as the public convenience or safety at any time might require.   (*Louisville Bridge Co.* v. *United States,* 242 U. S. 409, 37 Sup. Ct. 158; *People* v. *New York Railways Co.* 217 N. Y. 310, 112 N. E. 49; *People* v. *Geneva, W., S. F. & C. L. Traction Co.* 112 App. Div. 581, 98 N. Y. Supp. 719; *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Chicago City Railway Co.* 224 Ill. App. 380.)   The permission given a railway company to use the streets of a city is in subordination to the general power of the municipality over its streets.   The city is under no obligation to conform its treatment of its streets to the construction of the company's road-bed, but, on the contrary, the company must conform the construction of its road-bed to such reasonable regulations as are made by the municipality in the reasonable exercise of its powers concerning the use, control, regulation and improvement of its streets.   Street railways occupy public streets subject to the use of such streets by the public, subject to such burdens as may be made necessary by reason of the improvement of such streets and subject

to such changes in the construction of road-beds as improved and changed conditions may demand. (*City of Detroit* v. *Fort Wayne and Elmwood Railway Co.* 90 Mich. 646, 51 N. W. 688.) The power to enact police regulations operates on all alike. This fundamental principle is incident to and part of government itself, and need not be expressly reserved when rights or property is granted to individuals or corporate bodies. They take subservient to this power. (*Ohio and Mississippi Railroad Co.* v. *McClelland,* 25 Ill. 123.) The police power of a State embraces regulations designed to promote the public convenience as well as regulations designed to promote the public health, morals and safety. *Chicago, Burlington and Quincy Railway Co,* v. *Illinois,* 200 U. S. 561, 26 Sup. Ct. 341.

The ordinance of 1907 which authorizes the railway company to construct, maintain and operate its system of street railways in the streets of the city of Chicago provides that "the exact location of tracks in the streets shall be subject to the approval of the commissioner of public works." The tracks in question were located in Twenty-second street with the approval of the commissioner, and appellee seems to contend that the city is thereby estopped to require it to re-locate its tracks at its own expense. This provision in the ordinance did not change the relation of the parties. Without the provision the city had the right to direct the location of the tracks in the streets so as to protect the public in its use of the streets. The ordinance specifically provides that nothing contained in it shall be construed to deprive the city of its right to exercise the police power which it had at the time the ordinance was passed, but this provision was merely declaratory of the law as it already existed. There is nothing in the ordinance to indicate that the city has surrendered any of its power and authority to control and improve its streets, and if there were it would be void. The power of the city to protect the public in the use of its streets cannot be abrogated by

ordinance or relinquished by contract. *New Orleans Gas Light Co.* v. *Drainage Com.* 197 U. S. 453, 25 Sup. Ct. 471; *Snouffer* v. *Cedar Rapids and Marion City Railway Co.* 118 Iowa, 287, 92 N. W. 79; *Macon Consolidated Street Railroad Co.* v. *City of Macon*, 112 Ga. 782, 38 S. E. 60.

This case has been tried and is presented to us on the theory that these railway tracks in Twenty-second street must be re-located in the middle of the street as and when widened and that the proper notice has been given the railway company by the city to re-locate these tracks. The company, however, insists that, granting the city has the power to compel the re-location and removal of its tracks to the new location, it can do so only by exercise of the power of eminent domain. This argument is based upon the contention that the right to occupy the street with its tracks at the place where they are located and constructed is a property right, of which it cannot be deprived without compensation. What we have already said disposes of these contentions. The contract under which the company constructed its street railroad was granted and accepted subject to the right of the city to regulate the use of the public streets. (*Hammond, Whiting and East Chicago Railway Co.* v. *Zeigler,* — Ind. —, 152 N. E. 806.) Manifestly, this right included the power to compel a re-location of the tracks if their location, because of changed conditions, became a menace to public travel. If a street railway company which has been given license to occupy the streets of a municipality may not be compelled to re-locate its tracks when conditions change and public convenience requires, it might forever prevent improvements and developments in a particular section and would thereby determine its growth. If the city could not change the grade or the width of its streets except upon condition that it make compensation to the railway company, the gas company, the water company, the telephone company, the electric light company, and other companies occupying the streets under a contract with the

city, for inconvenience and expense thereby occasioned, the duty of the city to protect the public in its use of the streets and from time to time, as the community develops, to keep the streets in such condition as will accommodate public safety and convenience, would be seriously interfered with. All corporations thus occupying the streets take their grants from the city upon the condition that the city has reserved to it the full and unconditional power to make any reasonable change of grade or other improvement in its streets as the public necessity and convenience demand. *Columbus Gas Light and Coke Co.* v. *City of Columbus,* 50 Ohio St. 65, 19 L. R. A. 510; *Anderson* v. *Fuller,* 51 Fla. 380, 6 L. R. A. (n. s.) 1026.

Every legal question presented on this record is well settled. A review of the authorities shows that they are in harmony in holding that a municipality cannot surrender its power to control and regulate its streets, and that it is not liable to companies having a right by ordinance to place their appliances in the streets for expenses incurred in readjusting their appliances to meet conditions created by the municipality in making public improvements to promote the public convenience and necessity, when made in a reasonable manner. It is also uniformly held that the municipality, in causing such expenses, does not infringe the constitutional provision against the taking of property without compensation and the impairment of contracts, nor does it constitute a denial of due process of law. It is conceded by the railway company that the widening of Twenty-second street is necessary to handle the traffic at this point, that the improvement will promote the public safety and convenience, and that it is being carried out in a reasonable manner. We have given to the elaborate brief filed by the railway company the consideration which the consequences of our decision to the company and to the public demand, but we fail to find in the authorities cited support for its contention.

The court erred in its rulings on the questions of law submitted and certified and in overruling the demurrer of appellant to appellee's amended answer. The judgment is therefore reversed and the cause remanded to the circuit court of Cook county for further proceedings.

*Reversed and remanded.*

Mr. JUSTICE DUNCAN, dissenting.