## Easton City v. Miller, Appellant.

*Municipalities—Police powers—Street railways — Direction of traffic—Public Service Commission Act—Interstate commerce.*

An ordinance of a city providing that "all vehicles including street passenger cars shall, upon entering the public square known as Centre Square turn to the right thereof, and pass around said square as herein directed," is not an unreasonable exercise of the police power of the city where it appears that the square in question was practically the heart of the city's commercial life, and that on one of the approaches to it there passed between the hours of six o'clock a. m. and six o'clock p. m. 6,372 vehicles of all descriptions, including four hundred street cars which received and discharged daily from 25,000 to 40,000 passengers.

The right of a city to enact such an ordinance was not taken away by the act creating the Public Service Commission.

Such an ordinance is not an arbitrary, unreasonable or oppressive exercise of the power, because it involves some readjustment of the company's schedule and some relocation of the tracks on a few streets.

Such an ordinance does not impose a burden on interstate commerce even if some of the street cars which entered the square were engaged in such commerce.

*Street railways—Municipal consent — Municipal regulations — Police power.*

A company accepting a franchise that involves the use of a public street of a city or other municipality must accept it subject to the continuous right of such municipality to perform its strictly legal functions and obligations even though such performance may entail some expense upon the holder of the franchise in readjusting pole lines, water and gas pipes, street car tracks and the like, to the new situation brought about by the lawful act of the city.

*Public Service Commission — Jurisdiction — Municipalities — Street railways.*

Under the Public Service Commission Act the Commission may

decline to approve of a contract proposed to be entered into between a municipality and a public service company. This is so, not because the commission has any jurisdiction over the municipality, but because the public service company cannot enter into a contract without the approval of the commission. The contract fails because only one of the two parties, to wit, the city, is competent to contract. There is nothing in the act which takes away from the city the right to enact a proper ordinance regulating the direction of the movement of street cars.

Argued Dec. 3, 1917. Appeal, No. 44, Oct. T., 1917, by defendant, from judgment of C. P. Northampton Co., April T., 1915, No. 51, on verdict for plaintiff in case of City of Easton v. A. R. Miller. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART and WILLIAMS, JJ. Affirmed.

Appeal from judgment of the mayor of Easton. Before McKEEN, J.

From the record it appeared that the defendant was a motorman employed by the Easton Transit Company, operating a line of street railway in the City of Easton to and around a public square known as Centre Square. The defendant was arrested and fined for disobedience to an ordinance.

The information and complaint, upon which a warrant was issued and the defendant arrested, alleged that the defendant operated a street passenger car to the left upon entering the public square in the City of Easton, in violation of an ordinance of the City of Easton, providing that all vehicles, including street passenger cars, when entering the public square, turn to the right thereof.

A fine was imposed upon the defendant, who thereupon appealed to the Court of Common Pleas.

Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* was in overruling defendant's motion for judgment n. o. v.

*Asher Seip,* with him *H. J. Steele,* for appellant, cited: Ehrisman v. Harrisburg Ry. Co., 150 Pa. 180; Mahoning & Shenango Ry. & Light Co. v. New Castle, 233 Pa. 413; Penna. R. R. Co.'s Case, 213 Pa. 373; York Water Co. v. York City, 250 Pa. 115.

*Aaron Goldsmith,* with him *N. R. Turner,* for appellee, cited: Radnor Twp. v. Bell, 27 Pa. Superior Ct. 1; Edgewood Boro. v. Scott, 29 Pa. Superior Ct. 156; Duquesne Light Co. v. Pittsburgh, 251 Pa. 566; Com. v. Shafer, 32 Pa. Superior Ct. 497; Com. ex rel. v. Warwick, 185 Pa. 623; Jitney Bus Assn. v. Wilkes-Barre, 256 Pa. 468.

OPINION BY HEAD, J., July 10, 1918:

The defendant is a motorman in the service of the Easton Transit Company, a corporation duly authorized to operate street cars on the streets of the City of Easton. He was arrested for an alleged violation of the provisions of a city ordinance regulating the traffic on certain busy streets; such regulation requiring vehicular traffic of every kind to move only in a prescribed direction on a particular street. After a hearing before the mayor he was found guilty. An appeal to the Court of Common Pleas was asked for and allowed. The case was tried before a judge and jury. A verdict for the plaintiff followed upon which judgment was entered and the defendant appeals to this court.

The elaborate brief filed by the able counsel for appellant covers a very considerable extent of what we may term legal "terrain" and discusses many .important propositions. After an attentive consideration of the entire subject we have determined we can best indicate the reasons for the conclusion we have reached by a brief consideration of the four questions we now state:

(1) Before the public service law of the State became effective, would it have been within the police power of the City of Easton to have enacted an ordinance, reasonable in its terms, regulating the traffic on its streets, if

such regulation required the moving of all street cars in a prescribed direction?

(2) If the answer be in the affirmative, was the city shorn of the right to exercise such power by the passage of the act creating the Public Service Commission?

(3) Can an appellate court of law, under the facts found, declare the ordinance in question was arbitrary, unreasonable and oppressive?

(4) Did the ordinance impose a burden upon interstate commerce of such character that the right of the city to enact it became a Federal question cognizable only in the Federal courts?

(1) The ordinance in question was originally enacted in 1911. It was entitled "An ordinance regulating traffic upon the streets and highways of the City of Easton, declaring certain acts pertaining thereto nuisances and prescribing penalties therefor." No difficulty appears to have arisen until in December, 1914, the said ordinance was amended by the addition thereto of six new sections. The particular one of them which appears to give rise to the contention we are now considering is section eighteen which provides, "All vehicles including street passenger cars shall, upon entering the public square known as Center Square, turn to the right thereof and pass around said square as herein directed." Unless the police power of the State, delegated for proper purposes to the City of Easton has lost some of the characteristics that have heretofore been regarded as incident to a legal exercise of such power, it is difficult to perceive why the subject-matter of the ordinance in question was not well within the lines so often recognized as defining a zone, within which such power could rightfully be exercised. The evidence shows that the square in question is practically the heart of the city's commercial life. From that center pulsates, through the radiating street arteries, a great portion of its business activities. The testimony taken, which is undisputed, shows that on one of the streets in question there passed between the hours of

six o'clock a. m. and six o'clock p. m. six thousand three hundred and seventy-one vehicles of all descriptions. This number included something over four hundred street cars of the Easton Transit Company. These cars would daily receive and discharge from twenty-five thousand to forty thousand passengers. The regulation by the city of such traffic, so as to avoid congestion, manifestly had for its purpose additional security for the lives and limbs of the public, additional protection to property in the course of transportation and the promotion of the public convenience generally. These are the badges of a proper exercise of the police power. In Radnor Township v. Bell, 27 Pa. Superior Ct. 1, this court, in a learned and careful opinion by our Brother ORLADY, fully discussed the question of police power in so far as it may with propriety be discussed in any given case. Again in Central Market Company v. City of Erie, 44 Pa. Superior Ct. 191, we endeavored to show why the limits of the police power could not be measured by fixed and rigid lines and why in each case, as it arose, the courts could but pass upon the question immediately presented. In these opinions many cases from our own courts and those of other jurisdictions were reviewed and analyzed. In no one of them had it ever been held that an ordinance of the character of the one now before us was an abuse or an improper exercise of the police power inherent in every state and delegated by the State to the municipal agencies it has chosen to create. We are of opinion it was entirely competent for the City of Easton to enact the ordinance in question and that such enactment was a legitimate exercise of the police power lodged in the city.

(2) We do not think it was within the contemplation of the legislature, when it passed the public service law, that it was dealing with the cities of the Commonwealth or was attempting to deprive them of any power reasonably necessary to enable them to perform their legitimate municipal functions. It has not been before contended to our knowledge, that the Public Service Com-

mission has any jurisdiction whatever to determine that a municipality could not continue to do that which it was legally empowered to do before the public service law became effective. It is true the commission may decline to approve of a contract proposed to be entered into between a municipality and a public service company. That is not because it has any jurisdiction over the municipality, which continues to be competent to enter into a proper contract without any aid from the Public Service Commission. The result referred to flows from the fact that the commission has authority to withhold its approval of a contract about to be entered into by a public service company, and without that approval the company cannot legally enter into the contract. The contract therefore fails because only one of the two parties, to wit, the city, was competent to contract. We are of opinion the public service law in no way deprived the City of Easton of the right to enact the ordinance in question.

(3) Is there anything in this record that would warrant this court in declaring, as matter of law, the terms of the ordinance complained of were unreasonable? We think not. The fact that it may involve some readjustment of the schedules of the transit company may be conceded. It is quite possible that obedience to it may also require some relocation of the tracks of the company on the few streets in question. But such facts do not justify the conclusion that the franchise of the transit company, in the eyes of the law, has been either destroyed or impaired. A company accepting a franchise that involves a use of the public streets of a city or other municipality must accept it subject to the continuous right of such municipality to perform its strictly legal functions and obligations even though such performance may entail some expense upon the holder of the franchise in readjusting its pole lines, water and gas pipes, street car tracks and the like to the new situation brought about by the lawful act of the city. Such was the doc-

trine declared in American Tel. & Tel. Co. v. Harbor Creek Township, 23 Pa. Superior Ct. 437, as well as Scranton Gas and Water Co. v. Scranton, 214 Pa. 586. A brief quotation from the opinion of Mr. Justice STEWART in the case last cited will fully illustrate the views of this court on the question before us: "So far as property rights are concerned, there is but slight correspondence between the easement enjoyed by appellant company in the streets of the city, and the rights of the abutting owners in their several properties. The distinctions between the two are too obvious for discussion. It is enough to say with respect to the former, that it is held and enjoyed subject always to the earlier and superior rights of the public in the streets of the municipality. Among these is the power to regulate and control the streets in the interest of public health and safety. When these demand a change in the mode and manner of the enjoyment of the easement or privilege, and that demand is expressed through the municipal authority, in the exercise of reasonable discretion, that change must be made. Calling the legislative grant of privilege to use the streets a contract does not avoid the conditions on which the privilege is to be exercised. Whether such limitation or conditions be expressed in the grant or not is immaterial, for, as was said in Butchers' Union Slaughter House Co. v. Crescent City Live Stock Co., 111 U. S. 746, the power to control and regulate the streets so as to protect the public health, is one that cannot be bargained away by legislative or municipal grant. The power to control them for the protection of public safety, if not the same, stands on equally high ground." The same doctrine was again applied by this court in Springfield Water Co. v. Philadelphia & Garretford Street Railway Co., 45 Pa. Superior Ct. 516. The reasonable and proper exercise by a municipality of its police power is readily distinguishable from situations where the municipality, acting on a mistaken sense of its power, would undertake,

for instance, to prescribe the mechanical means and appliances by the aid of which a public service company would operate its cars and transport its passengers or freight. We need not prolong this opinion by referring to them in detail. We conclude the terms of the ordinance in question, as they apply to the operation of the cars of the transit company, could not be declared to be arbitrary, unreasonable or oppressive.

(4) The argument of the learned counsel for the appellant on this question is perhaps sufficiently answered by the statement of the learned court below that it does not appear "from the testimony that the cars engaged in interstate commerce enter the square." If that statement of fact be true, and it appears to be, an elaborate discussion of the question raised would be entirely beside the mark. We do not think it would be difficult to show that there is nothing in the provisions of the ordinance here complained of that could fairly be said to place such a burden upon interstate commerce as would make the ordinance obnoxious either to Federal legislation or decision. As we write we are informed by the public press of the decision handed down by the Supreme Court of the United States two days ago declaring unconstitutional a Federal statute commonly known as the child labor law. We quote the following from the published excerpt of the opinion of the court: "The grant of power to Congress over the subject was to enable it to regulate such commerce and not to give it authority to control the states in their exercise of the police power over legal trade and manufacture."

After mature reflection on all of the questions involved we reach the conclusion that the ordinance in question was a valid exercise of the power lodged in the city to regulate traffic on its streets and as a consequence the action of the learned court below exhibits no reversible error.

Judgment affirmed.

KEPHART and PORTER, JJ., dissent.