HAMMOND, WHITING AND EAST CHICAGO RAILWAY COMPANY *v.* STATE HIGHWAY COMMISSION ET AL.

[No. 25,046.  Filed June 22, 1926.  Rehearing denied November 23, 1926.]

1. HIGHWAYS.—*State Highway Commission has power to build highway to connect with improved trunk highway of adjoining state.*—The State Highway Commission Act (Acts 1919 p. 119, §12, §8279 Burns 1926) confers upon the commission the power to build and maintain "state highways" connecting the "state highways" with improved trunk highways of adjoining states,

Hammond, etc., R. Co. *v.* State Highway Comm.—198 Ind. 456.

whether such connecting highway passes through cities or otherwise.   p. 466.

2.   HIGHWAYS.—*The statute authorizes State Highway Commission to pave city street connecting at corporate, boundary with improved trunk highway of adjoining state.*—Section 22 of the State Highway Commission Act as amended in 1923 · (Acts 1923 p. 246, §8289 Burns 1926), relative to the paving of unimproved streets connecting with a "state highway" at limits of city having a population of more than 2,500 at the joint expense of the highway commission, the city and abutting property owners, does not restrict the power conferred by §12 thereof (§8279 Burns 1926) so as to prevent the State Highway Commission from paving a city street that connects at the boundary line of such city with an improved trunk highway of an adjoining state and on which the houses average more than 200 feet apart, where it has been duly included in the state highway system.   p. 468.

3.   HIGHWAYS.—*One opposing order of State Highway Commission has burden of showing, that commission did not have power to make the order.*—In a suit to enjoin the State Highway Commission from improving a city street that had been included in the state highway system and which connects with an improved trunk highway of an adjoining state, the plaintiff had the burden of proof to show that the highway commission did not have the power to make the improvement and to order the removal of street car tracks that would interfere with the work.   p. 469.

4.   APPEAL.—*All presumptions are in favor of trial court's decision as to State Highway Commission's jurisdiction to order improvement of street which has been included in state highway system.*—All presumptions are in favor of trial court's decision as to State Highway Commission's jurisdiction to order improvement of street that had been included in state highway system and the removal of street car tracks therefrom that would interfere with the construction of the improvement.   p. 469.

5.   HIGHWAYS.—*State Highway Commission may compel street railway company, at its own expense, to remove its tracks from highway.*—The State Highway Commission may compel a street railway company, at its own expense, to remove its tracks outside the portion of a street to be improved as a part of the state highway system, such power being conferred by §8294 Burns 1926, Acts 1919 p. 119, §26.   p. 471.

6.   HIGHWAYS.—*Rule as· to payment of expense of removal of street railroad tracks.*—In the absence of statutory authority for charging the expense of moving street railway tracks to the middle of a street that is to be improved as a part of the

458     SUPREME COURT OF INDIANA,

Hammond, etc., R. Co. *v.* State Highway Comm.—198 Ind. 456.

state highway system, the rule applicable is that in regard to railroad tracks in streets, namely, that one occupying a street with tracks for business purposes is charged with the duty of restoring street to safe condition.   p. 471.

7. STREET RAILROADS.—*Obligation of street railway to move its tracks in streets when necessity requires.*—A street railway company holds its franchise subject to an obligation to locate its tracks in the middle of the street, when directed to do so by competent public authority, and, at its own expense, to move the tracks when necessary, and restore the street to condition for travel at the grade fixed by such public authority. p. 472.

8. STREET RAILROADS.—*The state has police power over street railways to regulate use of streets, including power to compel relocation of tracks and to conform to grade then established.*— A franchise contract for the construction and operation of a street railway over the streets of a city and the indeterminate permit granted to the owner on the surrender of its charter were granted and accepted subject to the police power on the part of the state to regulate the use of the streets as public convenience or safety at any time might require, including power to compel the removal of the tracks to the middle of the street and to require them to conform to the grade which might then be established.   p. 473.

From Lake Superior Court; *Virgil S. Reiter,* Judge.

Suit by the Hammond, Whiting and East Chicago Railway Company against the State Highway Commission and others.   From a judgment for defendants, the plaintiff appeals.   *Affirmed.*

*Frederick C. Crumpacker, Edwin F. Friedrich* and *Miller, Dailey & Thompson,* for appellant.

*Arthur L. Gilliom,* Attorney-General and *Connor D. Ross,* Assistant Attorney-General, for the State.

EWBANK, C. J.—Appellant, as plaintiff, sued to enjoin the State Highway Commission, its members and employees and certain contractors working under its authority and direction, from tearing up and destroying plaintiff's street railway tracks in and along a portion of Indianapolis boulevard, in the city of Hammond, extending southeastwardly, parallel with the shore of

NOVEMBER TERM, 1926.          459

Hammond, etc., R. Co. *v.* State Highway Comm.—198 Ind. 456.

Lake Michigan, and not far distant from it, which boulevard the commission was causing to be improved by paving. A restraining order, and then a temporary injunction having been issued, the cause was tried on the merits, when the court made a finding for the defendants, dissolved the temporary injunction, and entered a judgment that plaintiff take nothing, and that defendant recover its costs. Overruling the motion for a new trial is properly assigned as error.

The issue was formed by an answer of denial to the amended complaint of a single paragraph. The complaint alleged, in substance, that the defendants were the members of the State Highway Commission, its director, engineers, agents, employees and representatives, and some road contractors; that plaintiff is a corporation owning and operating a double track street railway in the cities of Whiting, East Chicago and Hammond, and on Indianapolis boulevard in Hammond, in the State of Indiana; that its assignor constructed its street railroad tracks in the center of the highway, then only eighty feet wide, under a franchise from the board of commissioners before said highway was annexed by the city of Hammond, and afterward, in 1904, said city passed an ordinance granting plaintiff's assignor authority to lay down, construct, maintain and operate for fifty years thereafter a double track street railway, with all necessary and convenient turn-outs, loops, side-tracks and switches in, on and along said boulevard and other streets, and such grant was duly accepted, and thereafter title to such franchise vested in plaintiff; that plaintiff operated said lines thereunder until in June, 1921, when it surrendered its franchise and received in lieu thereof from the Public Service Commission of Indiana an indeterminate permit under which it continues to operate said lines; that Indianapolis boulevard runs from the state

line separating the states of Indiana and Illinois south-eastwardly across the city of Hammond, and thence across the city of Whiting, which adjoins Hammond on the east; that in 1924, the city of Hammond, by its proper officers, widened Indianapolis boulevard by taking twenty feet additional off the lands on the north side from the state line southeastwardly to Sheffield avenue, and thereby made it 100 feet wide, instead of eighty feet, and threw the center of the street ten feet farther north than it was before; that for more than ten years past, Indianapolis boulevard had been improved by a brick pavement about ten feet wide along each side of plaintiff's street railway tracks, originally constructed as a township paved road, and by a macadam pavement eighteen feet wide on that part of the street occupied by said tracks. But that, in 1924 and thereafter, the defendant State Highway Commission ordered the improvement of said boulevard from the state line southeastwardly for the distance of 6,905 feet, wholly within the city of Hammond, as then incorporated, by building a cement roadway of the total width of sixty feet, composed of two pavements, each thirty feet in width, at the distance from the center of the street (so widened) of about ten feet on either side, leaving an unpaved strip approximately twenty feet wide to be occupied by plaintiff's tracks; that pursuant thereto the defendants have constructed and completed a cement pavement thirty feet wide along the north side of the strip thus left in the center for street railway tracks, and also the south half (fifteen feet) of the cement pavement thus planned to be built along the south side of said unpaved center of the street; that said order made by the defendant highway commission commands and requires that the south track of defendant's said street railway shall be moved over north of the center of the street as so widened, into the space

adjoining the thirty-foot pavement already laid along the north side of the street, and that the curves and connections of said tracks be readjusted, so as to permit the construction of another fifteen-foot strip of pavement south of the center of the street, located, in part, upon the space now occupied by plaintiff's said south track; that defendants threaten, unless plaintiff shall so remove said track, to tear up the south track, and throw it over north of the other track, which acts will cause great and irreparable loss to plaintiff and will suspend the operation of plaintiff's street railway, and cause inconvenience and loss to the traveling public; and that to remove, relocate and rebuild the track, as stated, would cost $75,000. The complaint also alleged that this proposed improvement, by paving said boulevard, extends only from the western city limit of Hammond, where it coincides with the state line between Indiana and Illinois, southeastwardly within that city to a point 1,000 feet west of the eastern boundary of the city; that the city of Hammond has a population in excess of 40,000 inhabitants, but that the houses along this part of Indianapolis avenue for more than a mile average more than 200 feet apart; that the franchise under which plaintiff and its assignors operated before it was surrendered in exchange for an indeterminate permit did not contain any provision as to any removal or change of location of plaintiff's tracks in the street at plaintiff's expense, nor does the indeterminate permit issued to it by the Public Service Commission contain any such provision; and that said State Highway Commission has not taken any steps under the law authorizing the appropriation of property for public use to condemn plaintiff's said right to occupy the space in the street in which its tracks are laid, or to ascertain the value thereof, or to pay the damage which plaintiff will sustain by reason of such removal.

The conclusion was averred that the defendant highway commission was without jurisdiction in the matter.

Upon the trial of the cause, the foregoing facts were proved, substantially as alleged, and also the following: That after having ordered the construction of said improvement, and adopted plans and specifications for the same, the highway commission advertised for bids and let a contract for the construction thereof to defendants (appellees) McAfee and Smith, who, before the end of July, 1925, and before this action was commenced, completed the construction of the thirty-foot cement roadway north of plaintiff's tracks, and before the end of September, 1925, completed the south half (fifteen feet) of the thirty-foot cement roadway ordered to be built south of said tracks; that the plans and specifications, as adopted, provided for raising the grade of the surface of the street as so improved at various places along the course of the improvement in amounts varying from nine inches down to nothing, and said pavements aggregating forty-five feet in width have been laid in conformity therewith; that the defendant commission at no time sought to agree with plaintiff as to what plaintiff's damages would be, though plaintiff, when the commission asked it to relocate its tracks and before the contract for building the improvement was let, informed said commission of the expense to which it would be put if the track was moved; that plaintiff was not informed of the plan to remove and relocate its track until after the defendant commission had adopted the plans and specifications requiring them to be removed and had let the contract for the construction of said improvement in accordance therewith, and has not at any time consented or agreed to the making of said improvement, or acquiesced in the same, but has at all times denied the right and power of defendants to remove or disturb its tracks,

and so informed said commission, when it first learned of the proposed improvement; that all of plaintiff's Chicago bound travel from Hammond, Whiting and East Chicago, to the number of 10,000 passengers daily, passes over its tracks along Indianapolis boulevard, on which it maintains a ten-minute schedule each way all day, and a five-minute schedule morning and evening; and that the expense of removing the south track to the place contemplated, north of the other track, and putting both tracks in condition for use as so changed will be $67,677, of which $29,351 for labor and $14,399 for material, in the total sum of $43,750, must be expended on the track so removed, and in connecting it up, but of which only $2,652 would be expended in lifting such track over to its new position, and the remainder in putting the track in condition for use after being so removed; and that the cost of raising what is now the north track to the new grade, connecting it up and putting it in condition for use would be $23,927. There was also evidence that in October, 1923, the State Highway Commission approved as part of the system of state roads, one from the Kentucky state line near Evansville, through different cities, including Dyer and Hammond, "to Illinois-Indiana State line at east end of 106th street, Chicago"; that the east end of said 106th street connects at the state line with Indianapolis boulevard, in Hammond; that in February, 1924, said commission, by resolution, submitted to the Governor for his approval as part of the federal aid system, "State Road No. 10, Dyer to Chicago," and it was approved by the Governor; that on May 13, 1924, "Project No. 91" was prepared and submitted by the Indiana State Highway Commission to the Secretary of Agriculture, at Washington, D. C., for 2.757 miles of pavement on a road for travel on routes from Chicago and the state line to Hammond, Whiting and other

designated points east and south, for "60 feet of pavement to be constructed from state line to Calumet Ave. on Indianapolis Ave.," etc., accompanied by a map which recited that "Portion of route to be constructed immediately—red," and marked in red that part of Indianapolis avenue now being paved, and part of Calumet avenue extending south therefrom; that the State Highway Commission on behalf of the State of Indiana and the Secretary of Agriculture on behalf of the United States, after this suit was begun and before it was tried, entered into an agreement, pursuant to said "Project No. 91," by which the State Highway Commission bound itself to construct, and the United States agreed to pay certain sums as part of the cost of constructing, said pavement from the point where the Indiana-Illinois state line crosses 106th street in Chicago to the intersection of 116th street and Lake avenue in the city of Hammond, otherwise shown to include the part of Indianapolis avenue under consideration; and also a portion of Calumet avenue.

Appellant's first contention is that this evidence established a total lack of power or jurisdiction on the part of the State Highway Commission to construct the pavement on Indianapolis avenue because the part to be paved lies wholly within the city of Hammond, which has a population exceeding 2,500, and this part previously had been improved with macadam, and then by laying a ten-foot driveway of brick along each side, adjoining the street railway tracks. In support of this contention, counsel cite authorities to the effect that a board or commission of limited, statutory powers, can exercise only such powers as are conferred upon it by statute, either expressly or by necessary implication. But they cite only the statute creating the State Highway Commission, and amendments thereto, as conferring, defining and limiting the powers referred to. The

Hammond, etc., R. Co. *v.* State Highway Comm.—198 Ind. 456.

original statute, enacted in 1919, contained the following provisions, which still remain unchanged:

"§12. The State Highway Commission shall at the earliest possible moment, proceed to lay out a system of state highways which shall reach each and every county seat of the state and each and every city or town of over 5,000 inhabitants; and for the connection of county seats and cities of over 5,000 inhabitants with improved trunk highways of adjoining states, and connecting with said trunk highways from other states, whereby said trunk highways of other states and the connecting highways of this state become continuous improved highways. All highways heretofore designated as main market highways by the State Highway Commission, acting under an Act entitled 'An Act creating a state highway commission * * *' approved March 7, 1917, shall be state highways within the meaning of this act and shall be improved and maintained as state highways under this act the same as if designated as state highways under this act. When any part or all of said system shall have been laid out by the State Highway Commission and shall have been approved by the Governor and shall have been filed in the office of the State Highway Commission, highways of said system shall become and be known under this act as state highways and from that time shall be constructed, reconstructed, repaired and maintained by the State Highway Commission out of the state highway funds. A state highway within the meaning of this act is a public highway selected and designated under the provisions of this act for construction, repair or maintenance by the State Highway Commission out of the funds created by this act. The State Highway Commission shall have laid out a sufficient mileage of state highways by April 1, 1920, to reach each and

every county seat of the state. The same shall be approved by the Governor and filed in the office of the State Highway Commission by April 1, 1920." §8279 Burns 1926, §7671u1 Burns' Supp. 1921, §12, ch. 53, Acts 1919 p. 119.

It will be observed that the authority conferred by this section to build and maintain state highways connecting with improved trunk highways of adjoining states and reaching county seats and cities of more than 5,000 inhabitants is not restricted by any limitation depending upon whether such highways are in the country or in a city, or are improved or unimproved.

But the State Highway Commission is given express authority, and is charged with the express duty to lay out, improve and maintain state highways which
1. not only extend to and connect all cities of 5,000 inhabitants, but also connect those highways with improved trunk highways of adjoining states. There can be no doubt that, except so far, if at all, as the power thus conferred is restricted or taken away by some other statutory provision, the language quoted confers power to connect at the state line with the trunk highway of Illinois which leads southeastwardly from the city of Chicago around the southern end of Lake Michigan. The statutes which vest in a city or town the exclusive control over its streets for certain purposes might be deemed to limit the general authority conferred upon the State Highway Commission, and it may be that a city or town, which has built and is maintaining an improved street suitable and sufficient to accommodate the travel passing on and along a state highway which includes such street as part of it, has rights in the matter of improving and controlling that street as against the State Highway Commission. But the city of Hammond is not asserting any such rights, and whether it has them or not is a question not before

this court, as to which we decide nothing. See §10284, subd. 31, §10340, subd. 5, 6, 10, 11 and 12, §10341 Burns 1926, §8655, subd. 31, §8696, subd. 5, 6, 10, 11 and 12, §8697 Burns 1914, §53, 93, 94, ch. 129, Acts 1905 pp. 250, 279, 280, 281.

The objections in this case are presented by a private corporation, and we turn to a consideration of other provisions of the statute defining and limiting the powers and jurisdiction of the State Highway Commission.

Appellant cites and relies upon §22 of said Highway Commission Act, as amended in 1923, which provides that: "If any state highway connects at the corporate limits of any city or of any town having a population of more than 2,500, as shown by the last preceding United States census, with an unimproved street of such city or town, the State Highway Commission may, in its discretion, improve the same as part of such state highway. * * * If a street of any incorporated city or town is improved under the provisions of this act, and the expense per mile of such improvement is greater than the average expense of improvement of such road outside the corporate limits of the city or town, then and in that event, the extra expense shall be paid by the city or town to the state highway fund. The common council or board of trustees of such city or town shall levy a tax upon the whole property of the city or town, at such rate as will be sufficient to produce an amount equal to 75 per cent. of the extra expense to be paid by such city or town, and 25 per cent. of such extra expense shall be assessed as benefits against the abutting property, in the manner provided by law for such assessments, to pay the amount due to the state for such improvement. The provisions of this act shall be construed in conformity to and in compliance with the provisions of the federal act which

468    SUPREME COURT OF INDIANA,

Hammond, etc., R. Co. *v.* State Highway Comm.—198 Ind. 456.

extends federal aid to the states for the construction of highways in municipalities having a population of not to exceed 2,500 as shown by the last preceding United States census, except that portion of any such highway or street, along which, within a distance of one mile, the houses average more than 200 feet apart." §1, ch. 77, Acts 1923 p. 246, §8288 Burns 1926.

And the new Federal Aid act thus referred to provides, "that for the purpose of this act the term 'rural post road' shall be construed to mean any public road over which the United States mails now are or may hereafter be transported, excluding every street and road in a place having a population, as shown by the last Federal census, of 2,500 or more, except that portion of any street or road along which the houses average more than 200 feet apart." §2, 39 Stat. at L. 355; §2, 42 Stat. at L. 212.

There is nothing in section 22, as so amended, which purports to limit or take away any powers or authority conferred upon the State Highway Commission by other provisions of the act creating it. This section purports expressly to confer additional authority upon the State Highway Commission, to be exercised "in its discretion," where the street of a city is "unimproved," and a state highway connects with it "at the corporate limits," regardless of the consent or nonconsent of the city or town officers, who may be compelled to co-operate in such a case. And it expressly declares the legislative intent that this act shall conform to the Federal Highway Aid statute by which a city street whereon the houses average more than 200 feet apart is defined as a "rural post road," whatever the size of the city. Under these provisions, we do not think that anything in §22, as amended, operates to restrict the general power conferred by §12, so as to prevent the State Highway Commission from having

jurisdiction to pave a street in a city which connects at the boundary line of such city with an improved trunk highway of an adjoining state, and on which the houses average more than 200 feet apart, where it has been duly included in the system of state highways adopted.

We omit any discussion of the question whether the existence of an ancient pavement, consisting of a single-track brick roadway on either side of an unpaved strip occupied by the tracks of a street railway, in an avenue 100 feet wide, would necessarily, as matter of law, establish that such avenue was not an "unimproved street" within the meaning of the statute, as against a finding to the contrary by the court below, if such a finding were essential to uphold the judgment appealed from. Neither do we find it necessary to decide whether or not such a street forming part of a state highway of Indiana, and connecting at the corporate limits of the city, where such limits extend to the state line, with an improved trunk highway of the adjoining state with which it makes a continuous trunk line, comes within the provisions of the statute on the subject of paving a street at the joint expense of the State Highway Commission, the city and the owners of abutting property, where a state highway connects at the corporate limits of a city having a population of more than 2,500, with an unimproved street. Though we have an impression that, under the liberal construction which must be given to this statute, it does.

Section 12, above set out, conferred power upon the State Highway Commission to act under the state of facts therein provided, and §22 does not take that power away. Appellant had the burden of proof to show that such facts as would confer the jurisdiction which the defendants were exercising did not exist, and all presumptions are in favor of the

action of the trial court. There was evidence from which that court might lawfully find the existence of facts giving the State Highway Commission power and jurisdiction to order the improvement of Indianapolis boulevard, and the removal of appellant's tracks to the middle of the street.

Appellant next contends that even if the State Highway Commission be found to have jurisdiction to make the improvement and to cause the removal of the tracks, it does not have power to compel the owner to remove them at its own cost, but that such power is limited to removing and relocating the tracks at the expense of the commission. The statute provides as follows: "In all cases where the track or tracks of any steam, electric interurban or street railroad company occupies any part of any highway which is ordered improved and maintained by the state highway commission under the provisions of this act, such railroad company shall improve and maintain, or pay for the cost of improving that portion of the highway occupied by its tracks, including the space between the rails, the space between the tracks, if there be more than one track, and the space 18 inches in width on the outside of the rails; but in all cases where practicable, such improvement to the full width thereof shall be constructed outside of the area occupied by such tracks and where not practicable to do so then the highway commission shall have the power to remove such tracks to that part of such highway outside the area to be so improved. Whenever such highway improvement is made so as to embrace within its limits the tracks of any railroad, interurban, suburban or street railroad, then such improvement shall be made of sufficient width to give as much room for general travel on the side or sides and outside of such tracks as is given in places where there are no such tracks within such improvement. Any such rail-

road may elect, by written notice thereof filed with the State Highway Commission not less than 20 days prior to the date on which the contract for the improvement of such highway shall be let, to improve the portion of such highway occupied by its tracks or to pay for the improvement thereof as done by the State Highway Commission.   If the railroad company shall elect to improve the portion of the highway occupied by its tracks, it shall perform the work of improving such portion of such highway with such material and in such manner and according to such plans and specifications as the State Highway Commission may prescribe and shall commence, proceed with and complete the work within a time to be fixed by the State Highway Commission and for failure so to do shall be subject to a fine of not to exceed $50.00 per day for each and every day that such improvement is not commenced or completed and after the date named by the Commission.   If the railroad company shall elect to pay for the improvement as done by the State Highway Commission any sums so assessed by the Commission to cover the cost of such improvement together with all the cost in collecting the same, including attorneys' fees, to be fixed by the court and taxed as costs in the action brought to enforce payment, shall, from the date of filing a statement of such assessment attested by the director of the State Highway Commission, in the office of the county recorder of the county in which such improvement was made, constitute a lien, to which only the lien of the state for state, county, township and school taxes shall be paramount." §8294 Burns 1926, §7671i2 Burns' Supp. 1921, §26, ch. 53, Acts 1919 p. 119.

Appellant insists that the provision above quoted that "the Highway Commission shall have the power 5, 6. to remove such tracks to that part of such Highway outside the area to be so improved" neces-

sarily implies a removal at the expense of the highway commission, notwithstanding the express provision that, in case the highway is improved without removing the tracks, the railroad company must either improve the portion of the highway occupied by its tracks at its own expense within a time fixed by the State Highway Commission, or pay the cost of such improvement when made by the highway commission, with attorney fees and costs. But we think that appellant is mistaken in such contention. The express provision requiring the company to pay for improving the space between its tracks if they are not removed, even though the highway commission would otherwise have to pay for paving that space, tends to support a construction of the language quoted by which the expense of removal must be borne by the company. In the absence of an express statutory provision for charging against any designated party the expense of removing the tracks to the middle of the highway and making them conform to the grade of the street, the general rule of law on the subject of railroad tracks in streets must control. And that rule is that whoever occupies a street with tracks for business purposes is charged with the duty fully to restore the street to safe condition for travel thereon. *Wabash R. Co.* v. *Railroad Comm., etc.* (1911), 176 Ind. 428, 436, 95 N. E. 673; *City of Indianapolis* v. *Indianapolis Water Co.* (1916), 185 Ind. 277, 285, 113 N. E. 369.

And the appellant company holds its franchise subject to an obligation to locate its tracks in the center of the street when directed to do so by competent public authority, so as not unnecessarily to interfere with the use of the street for travel by others, and at its own expense to construct them therein and restore the street to condition for travel at the grade fixed by such public authority. *Macon, etc., R.*

*Co.* v. *Mayor, etc.* (1900), 112 Ga. 782, 38 S. E. 60; *Snouffer* v. *Cedar Rapids, etc., R. Co.* (1902), 118 Iowa 287, 309, 92 N. W. 79; *People, ex rel.*, v. *Geneva, etc., Traction Co.* (1906), 98 N. Y. Supp. 719, 112 App. Div. 581, affirmed 186 N. Y. 516, 78 N. E. 1109; *Easton City* v. *Miller* (1917), 69 Pa. Super. Ct. 554, 559; *Grand Trunk Western R. Co.* v. *South Bend* (1912), 227 U. S. 544, 553, 33 Sup. Ct. 303, 57 L. Ed. 633, 44 L. R. A. (N. S.) 405; 3 Elliott, Railroads (3d ed.) §1431; §5674 Burns 1914, §4158 R. S. 1881; §7684 Burns 1914, §36, ch. 167, Acts 1905 p. 533.

Appellant further insists that even though the State Highway Commission may have power to direct the relocation of the street railroad tracks and to compel the owner to remove them to such location, it can do so only in the exercise of the power of eminent domain. And from the fact that appellant's franchise did not expressly provide for the removal and relocation of the tracks once constructed, appellant reasons that the right to occupy the street with its tracks at the place where they were first located and constructed is a property right of which it cannot be deprived without compensation. In this appellant is mistaken. The franchise contract under which appellant's grantors constructed its street railroad, and the indeterminate permit which was granted to it upon the surrender of that franchise, were granted and accepted subject to a reserved police power on the part of the state to regulate the use and enjoyment by appellant of the highway for occupation by its tracks in such manner as the public convenience or safety at any time might require. And this included power on the part of the legislature, through an order of the State Highway Commission, to compel the company to remove its tracks from the center to the side of the street, or from the side of the street to the center, and to conform

them to a grade of the street which afterward might be established. *Grand Trunk Western R. Co.* v. *South Bend, supra; People, ex rel.,* v. *Geneva, etc., Traction Co., supra; Easton City* v. *Miller, supra; Snouffer* v. *Cedar Rapids, etc., R. Co., supra; Macon, etc., R. Co.* v. *Mayor, etc., supra.*

The judgment is affirmed.

### ON PETITION FOR REHEARING.

EWBANK, J.—As we stated before, the appellant company was occupying Indianapolis boulevard with its tracks subject to the right and power of the State of Indiana to require that it should, at its own expense, remove them to the middle of the street, reconstruct them there, and restore the street to condition for travel in case they should cease any longer to be in the middle by reason of the street being relocated, widened or otherwise changed, and subject to the continuing obligation on its part, imposed by the common law and by statute, as a condition of so occupying the street for business purposes, that it would as fully as possible restore the surface of the street to safe condition for travel thereon, and would at all times so maintain its tracks that they would not render it unsafe for that purpose; and it long had been occupying them subject thereto when the statute (§26, Acts 1919 p. 119, *supra*) was enacted which provides that "the Highway Commission shall have power to remove such tracks to that part of such highway outside the area to be so improved," as set out in the original opinion. See authorities there cited.

And, after that statute was enacted, the law previously in force continued in effect, and, in occupying the street with its tracks, the appellant company continued to hold subject to the duties and obligations thereby imposed, except so far as the statute expressed

a legislative intent to the contrary. We do not find in the statute any declaration of a purpose to relieve the company from its obligation under the common law and statutes previously in force to pay the cost of relocating its tracks and restoring the street, or of a purpose to charge that expense against the State of Indiana, as represented by the State Highway Commission.

The petition for a rehearing is overruled.

Myers and Travis, JJ., dissent.

### DISSENTING OPINION.

MYERS, C. J.—I cannot agree with that part of the prevailing opinion in this case construing §26, Acts 1919 p. 119. My objections briefly stated are that the majority conclusion is made to rest upon the reserved power of the state to enact all reasonable measures to protect the general public in the use of streets and highways where the same have been subjected to additional use by a street railroad company. The principles of law used to support the majority opinion as abstract propositions are correct, but they are not applicable to the circumstances of this case. The question at hand does not depend upon what the legislature might have done, but upon what it actually did. This court cannot legislate, nor can it impliedly read into a statute words or a construction that will change the expressed intention of the legislature.

The highway commission of this state is a statutory body vested with limited statutory powers and authority. It is not the state, it is not a municipality, nor has it any power to legislate. It may very properly be denominated a state agent governed by definite statutory rules and regulations for improving and keeping in repair such highways only of the state over which it may obtain jurisdiction by complying with certain legislative directions.

476    SUPREME COURT OF INDIANA,

Hammond, etc., R. Co. *v.* State Highway Comm.—198 Ind. 456.

Grant that the commission has taken the essential steps authorizing it to improve the highway in question. The question then was the manner of making the improvement. To my mind the General Assembly foresaw the situation confronting the commission in the present case, and by §26, *supra,* plainly marked the procedure it should follow. By this section the commission is allowed to exercise a discretion in the adoption of plans for proposed improvements. In the instant case it was given a choice of three methods: (1) To leave the street railroad tracks where they were and require the company to improve or pay the cost of improving a certain specified portion of the improvement as ordered; (2) if practicable, the commission was directed to make the improvement outside of the area occupied by the company's tracks; (3) "and where not practicable to do so then" the commission was given the power to remove the tracks outside of the area to be improved.

The power to improve and the power to remove were steps toward the same general object, that of making the highway safe and suitable for general public use, for which it was originally established. It certainly does not follow from "the power to remove such tracks" that the tracks are to be excluded from the highway, nor that such removal shall render such tracks inefficient for their purposed use. It will be noticed that the legislatute has not given the commission the power to *cause* the tracks to be removed, or to *order* the tracks removed, or that it "shall have the power to remove such tracks" and charge the expense thereof to the company. The power to remove the tracks necessarily carried with it the power to relocate them at some point on the highway consistent with and as a part of the proposed improvement. Since the proposed improvement included as a part thereof the removal of

the tracks, with power in the commission to do so, and no expression on the part of the state concerning payment for the expense thereof, the conclusion must follow that the entire work proposed is no more than a single general improvement to be paid for as such by the commission. Had the legislature in mind a change of tracks as here contemplated by the commission, where the cost of such change was to be borne by the company, it could, by the addition of a few words, have said so, as it did in case the highway was ordered improved without moving the tracks.

From my examination of the record and briefs of counsel, I am convinced that the trial court and this court in the prevailing opinion gave §26, *supra,* an erroneous meaning. The judgment below should be reversed.

Travis, J., concurs in the dissenting opinion.