STATE OF INDIANA *v.* INDIANA RAILROAD ET AL.

[No. 26,549. Filed June 9, 1936.]

*Philip Lutz, Jr.,* Attorney-General, *U. C. Stover,* Deputy Attorney-General, and *Cloe, Campbell, Cloe & Cloe,* for appellant.

*Smith, Remster, Hornbrook & Smith, Paul Y. Davis, Kurt F. Pantzer, Ernest R. Baltzell* and *William G. Sparks,* for appellees.

FANSLER, J.—Appellant began this action to recover the cost of improving that portion of a highway lying between the rails, and 18 inches on the outside of the rails, of a railroad track, which, at the time of the improvement, was the property of the Terre Haute, Indianapolis & Eastern Traction Company. The railroad property was afterwards sold at receiver's sale to appellee Indiana Railroad. Appellee Fidelity-Philadelphia Trust Company, trustee, has a mortgage lien upon the railroad property against which appellant seeks to enforce a lien.

Separate demurrers of the Indiana Railroad and the Fidelity-Philadelphia Trust Company, trustee, were sustained, which rulings are the basis of the errors assigned. It is conceded that the questions arising under the two demurrers are identical for the purposes of this appeal.

The same subject-matter was involved in *State* v. *Terre Haute, etc., Traction Co.* (1929), 201 Ind. 346, 350, 352, 167 N. E. 127, 128, 129. After that cause was reversed, a receiver having been appointed for the railroad, the state intervened and pursued its remedy there,

rather than in the action from which the former appeal was taken.

An examination of the complaint involved in the former appeal discloses an allegation that the railroad was operating under a franchise, the character of the franchise not appearing. The decision of this court involved an interpretation of section 26 of the State Highway Law (Acts 1919, p. 119), which provides that a railroad occupying a highway which is paved or improved by the state highway commission shall improve, or pay for the improvement of, that part of the highway which lies between the rails, and 18 inches on the outside thereof. It is said in the opinion that: "Appellee concedes that the statute (section 26, *supra*) casts the general obligation upon it to improve and maintain, or pay the cost of improving, that portion of the highway occupied by its tracks, which has been ordered improved and maintained by the state highway commission." But now, appellees contend that there is no such obligation, basing their contention upon the proposition that the railroad company surrendered its franchise (under which it was obligated to pay) on July 19, 1921, and accepted an indeterminate permit under the Public Service Commission Law; that section 1 of the Act of 1921 (Acts 1921, ch. 93, p. 197, section 12774, Burns' Ann. St. 1926) provides that: "Such public utility shall hold such permit under all the terms, conditions and limitations of said act as fully and completely as if the same had been done prior to July 1, 1915;" that the indeterminate permit constitutes a contract, the terms of which cannot be altered or modified by the state; that the statute (section 26, *supra*) was enacted after July 1, 1915, and its enforcement would therefore have the effect of impairing the indeterminate permit contract, which is not permitted by the Constitution; that the railroad is under no obligation to pay for the improvement of that por-

tion of the highway which its tracks occupy "as distinguished from the common-law obligation to repair such area, and that such obligation could not be imposed except by contract."

Appellees, to support the latter contentions, rely upon *Western Paving & Supply Co.* v. *Citizens Street Railroad Co.* (1891), 128 Ind. 525, 530, 26 N. E. 188, 190, 28 N. E. 88; *State ex rel. City of Vincennes* v. *Vincennes Traction Co.* (1918), 187 Ind. 291, 117 N. E. 961; and *Indianapolis & Eastern Railway Co.* v. *Town of Newcastle* (1909), 43 Ind. App. 467, 87 N. E. 1067. But these cases involve a construction of a franchise contract between a railroad and a city, and they decide only that, where there is a provision in the contract defining the railroad's responsibility in connection with the maintenance and improvement of a street which is occupied by its tracks, the parties are bound by the contract, and the contract measures and limits the railroad company's responsibility. It is true that it is said (p. 473) in the last case cited that: "To render the street railway liable for the improvement of a street there must be an express stipulation in the franchise to that effect." But this is mere dictum, announced apparently upon authority of *Western Paving & Supply Co.* v. *Citizens Street Railroad Co., supra,* and *Columbus Street Railway & Lighting Co.* v. *City of Columbus* (1909), 43 Ind. App. 265, 86 N. E. 83, in both of which cases there was an express contract fixing the rights and obligations of the company, and the court was concerned only with an interpretation of the contract. In the Western Paving & Supply Co. case, which involved the interpretation of a contract, the court engaged in speculation as to the duty of a railroad to *improve* a street in the absence of a provision in its franchise requiring it so to do, and expressed the opinion that there was some doubt upon the question. The opinion quotes from Elliott on

Roads and Streets (1890), p. 594, as follows: "As much as can be safely affirmed in the present state of the decided cases is that the private corporation is bound to repair but is not bound to improve. It is bound to restore, but is not bound to change. . . . It would not, as we interpret the rule sustained by the weight of authority, be compelled to make the new pavement, but it would be its duty, in making repairs after the new pavement was laid, to make them to correspond to the new pavement." But an examination of the text from which the quotation is taken, and the authorities cited in the notes, discloses that there is much confusion˙between contract obligations and obligations in the absence of a specific contract upon the subject of repair or repaving of streets. The language quoted is on page 594 of the text-book. We quote from page 595: "The question whether a street railway company can be required to improve a street where that duty is not imposed upon it by the terms of its grant is one upon which the decisions are in conflict. It is maintained by some of the courts, with much force and plausibility, that the franchise of a street railway company is property and should be assessed for the expense of the improvement. The franchise of the company is unquestionably property, and the improvement benefits that property to a greater extent in most cases than it does the property of abutting lot owners, and, as the foundation of the right to assess private property for the cost of a public improvement is the theory that the benefit is the equivalent of the assessment, there is no little strength in the position that the railway company is liable to assessment. But this doctrine is denied by able courts." In a note, six cases are cited as supporting the statement: "But this doctrine is denied by able courts." In none of those cases was the question of whether a street railway company can be required to improve a street, where that

duty is not imposed upon it by the terms of its grant, presented or discussed. All of the cases referred to deal with the construction of the language of the charter or contract of the company, and they go no further than to hold that, where the franchise requires them to repair, the railroads cannot be required to re-pave or improve.

By surrendering its franchise, by agreement with the state, and by accepting in lieu thereof an indeterminate permit, the contract rights of the parties involved in the franchise were abrogated. The company was no longer bound by its obligations thereunder, nor was it in a position to insist upon privileges granted in the franchise. If the indeterminate permit granted by the state and accepted by the company can be said to be a contract, it is most indefinite as to terms, and certainly there is no express provision exempting the company for liability and responsibility concerning the public highways which it occupies, or in any way limiting responsibility for the maintenance or repair thereof. It is said in *Ft. Smith Light & Traction Co.* v. *Board of Improvement, etc., of the City of Ft. Smith* (1927), 274 U. S. 387, 389, 47 S. Ct. R. 595, that: "It is urged that the acceptance of the indeterminate permit under the Act of 1919 constituted a contract between the railway and the state by which the state bound itself not to impose any added burdens except in the exercise of its police power; that the requirement for street paving was not an exercise of the police power and was therefore a forbidden impairment of the contract. This contention assumes that the permit exempted the railway from paving costs. But no such exemption appears in the permit. Provisions of this character are not lightly to be read into a contract between a state and a public utility." In *Durham Public Service Co.* v. *City of Durham* (1923), 261 U. S. 149, 151, 152, 43 S. Ct. R. 290, the contract of the railroad

provided that: "Nothing herein contained shall be construed to require said Durham Traction Company to pave its roadbed, but it shall be required to restore its roadbed to the conditions in which it was at the time of laying said tracks." It was held that this contract imposed no liability for paving, and neither did it grant exemption therefrom, and that such exemptions must plainly appear; that, concerning such contracts, "the general rule is that doubts as to provisions in respect of them must be resolved in favor of the municipality or state." See, also, *Western Paving & Supply Co.* v. *Citizens Street Railroad Co., supra,* and *State ex rel. City of Vincennes* v. *Vincennes Traction Co., supra.*

In *Cleveland, C. C. & St. L. Ry. Co. et al.* v. *Mumford et al.* (1935), 208 Ind. 655, 197 N. E. 826, 832, it is said to be "well settled that a railroad acquires its right of way, whether in fee or by easement, subject to the right of the state to intersect it with public drains as well as public highways, and subject to the condition that it must maintain its road across such structures at its own expense so as not to impair their usefulness. It is not important whether the structures were established before or after the railroad is built." The principle is applicable here, and it cannot be doubted that, where a railroad accepts a franchise or permit to lay its tracks in a public highway, its rights are subject to the primary purpose to which the highway is dedicated; and, in the absence of an express contract to the contrary, it is required to make its structures conform to such changes as are by the public deemed necessary to maintain the usefulness of the highway. In *Hammond, etc., Railway Co.* v. *State Highway Commission et al.* (1926), 198 Ind. 456, 473, 152 N. E. 806, 811, 154 N. E. 20, it is said that: "The franchise contract under which appellant's grantors constructed its street railroad, and the indeterminate per-

mit which was granted to it upon the surrender of that franchise, were granted and accepted subject to a reserved police power on the part of the state to regulate the use and enjoyment by appellant of the highway for occupation by its tracks in such manner as the public convenience or safety at any time might require." In *State* v. *Terre Haute, etc., Traction Co., supra,* this court said (p. 352) that: "It is not within the power of appellee company, when occupying appellant's public highway, to say what it will or will not do, in answer to a sovereign direction to do, in order to preserve appellant's highway for its principal use. Appellant, in enacting the law, acted through its police power, which is binding upon all citizens, including appellee company." In *Durham Public Service Co.* v. *City of Durham, supra,* it is recognized that the legislature may impose assessments upon railroads for the improvement of streets which they occupy with their tracks, and that the reasons why they are subject to such assessments are obvious. There are many other cases which recognize the rule that, in the absence of a contract exempting it from liability therefor, railroads may be required to pave or otherwise repair or improve streets occupied by their tracks, or be assessed for the improvement thereof.

The right of the state to require railroads to maintain their rights of way in safe condition, at their own expense, where they cross or come in contact with other public ways, cannot be questioned. When a railroad accepts a franchise to build its tracks in the public highway it is with knowledge that the highway will be continued for its primary purposes, and that changes in conditions may require changes in the construction and maintenance of the traveled way. It cannot be said that a pavement in a busy city street, under modern conditions, is safe and convenient for travel if the middle of the street is occupied by a rail-

road track unpaved between the rails and for that distance outside which is occupied by the ties; and if the legislature determines that such a condition is unsafe for the general vehicular traveling public, no reason is seen why it may not, under the police power, require that the railroad improve such space to conform to the remainder of the pavement in such a manner as to insure the safety and convenience of the traveling public, in the absence of an express contract to the contrary.

Under the statute here in question, the railroad had the right to elect to improve, and, in the absence of such election, the state improved and charged the costs thereof to the railroad. Such work may also be the basis for the assessment of a local improvement tax. The railroad has an interest in the condition of the highway. It is conceded that it is obliged to maintain and repair the space which it occupies. Changed conditions may make the expense of repair extremely high, and an improvement which makes the way more stable and repairs less expensive is a benefit which may be the basis of an assessment, and there may be other benefits. See *Durham Public Service Co.* v. *City of Durham, supra.* The railroad would therefore be bound by the statutory requirement that it pave that part of the street occupied, regardless of whether the statute was enacted before or after the granting of its indeterminate permit.

But if appellees' view, that the railroad was only bound by statutory requirements in effect at the time the franchise was granted, is accepted, still, their position is untenable. By section one of the act of 1921, *supra,* it is provided: "That any public utility operating under an existing license, permit, or franchise, from any county, city or town, within the State of Indiana, shall upon filing at any time prior to July 1, 1923, with the auditor or clerk of any such

county, city or town which granted such license, permit or franchise, and with the public service commission of Indiana, a written declaration, legally executed that it surrenders such license, permit or franchise, receive by operation of law in lieu thereof an indeterminate permit as provided in the act creating the public service commission of Indiana, entitled 'An act concerning public utilities, creating a public service commission, abolishing the railroad commission of Indiana, and conferring the powers of the railroad commission on the public service commission,' approved March 4, 1913, and such public utility shall hold such permit under all the terms, conditions and limitations of said act as fully and completely as if the same had been done prior to July 1, 1915." This statute was in force May 31, 1921. The railroad surrendered its franchise and accepted an indeterminate permit on July 19, 1921, and if the indeterminate permit be deemed a contract, the statutes in force respecting the rights, liabilities, and obligations of railroads at the time the permit was issued must be deemed a part of the contract. It is contended that the last clause, which provides that: "Such public utility shall hold such permit under all the terms, conditions and limitations of said act as fully and completely as if the same had been done prior to July 1, 1915," has the effect of binding the railroad by the law as it existed prior to July 1, 1915, and that it is not subject to any amendments or subsequent legislation. But such is hardly a reasonable interpretation of the legislative intention. At the time the Public Service Commission Law was passed, the privilege of surrendering franchises and accepting an indeterminate permit was limited to July 1, 1915. Thereafter the time in which to come within the terms of the law was extended to dates certain by amendment. In 1921 it was again extended, but by a separate statute. The words, "as if the same had been

done," refer to the surrender of a franchise and the acceptance of an indeterminate permit. The railroad operated under its franchise for six years after July 1, 1915, and was entitled to, and accepted, all of the rights and privileges thereby granted, and was subject to all of the obligations thereof. Its rights and privileges, duties and obligations, under its indeterminate permit, cannot logically be considered as effective upon any date when its franchise was still in effect, since the two are inconsistent in numerous respects. The clause in question must be construed as intended merely to extend the time within which a utility might come within the terms of the law. No such provision was contained in the amendment extending the time, and, if appellees' contention be sustained, we would have utilities, which accepted indeterminate permits under the amendments after the expiration of the original date, bound by new legislation and amendments to the statute, while those coming in under the statute of 1921 would be exempt from such changes and amendments. No basis is seen for concluding that such was the legislative intention. The act of 1919 (section 26, *supra*) was in effect when the indeterminate permit was accepted and became operative. What has been said must not be interpreted as indicating that the utilities operating under indeterminate permits are not bound by any reasonable change in the law.

It is contended that the provision for a lien is so vague and indefinite as to the property to be subject thereto that the act, and particularly the lien provision thereof, is of no effect. The last sentence in section 26 of the Act of 1919, *supra,* is as follows: "If the railroad company shall elect to pay for the improvement as done by the state highway commission, any sums so assessed by the commission to

cover the cost of such improvement together with all the cost in collecting the same, including attorney's fees, to be fixed by the court and taxed as costs in the action brought to enforce payment, shall, from the date of filing a statement of such assessment, attested by the director of the state highway commission, in the office of the county recorder of the county in which such improvement was made, constitute a lien, to which only the lien of the state for state, county, township and school taxes shall be paramount." The provision has to do with the collection of the cost of the improvement by action in court. The judgment and execution would provide a lien upon all of the property of the railroad. But the provision contemplates a lien from an earlier date, that is, from the date of filing a statement of the assessment. It contemplates a lien for the whole amount for which the court will ultimately give judgment and precedence over all other liens except state, county, township, and school taxes, a lien that is paramount therefore to civil city taxes.

Statutory liens for public improvements attach only to the property described as improved in the proceedings, and there is no personal liability upon the owner for the cost of the improvement except in case of waiver and express agreement to become personally liable. But, by this statute, the railroad is made personally liable, and liability for payment of the improvement cost is not limited to any specific property of the railroad found to be benefited. The railroad itself, and all of its property, became liable for the payment of the paving cost, and subject to a lien therefor, upon judgment and execution. It cannot reasonably be supposed that the legislature intended to establish by statute some lesser lien, more limited in its scope than that provided by judgment and execution. The obvious purpose of the provision is to enforce and insure collection of the pavement

costs. The statute must be construed as establishing a lien upon the property, which would have been subject to the lien of a judgment and execution, and fixing the effective date of the lien as of the date of filing a statement of the assessment, and giving the lien preference as indicated in the act.

Judgment reversed, with instructions to overrule the demurrers to appellant's complaint.